## CHRISTENSEN v. NIELSON.

No. 4753.   Decided March 29, 1929.   (276 P. 645).

604

*King & King,* of Salt Lake City, for appellant.

*L. R. Christensen,* of Mount Pleasant, for respondent.

STRAUP, J.

This action was brought by the plaintiff to recover damages from the defendant alleged to have grown out of a contract by the terms of which the plaintiff agreed to sell and deliver 1,700 head of fat lambs to the Hauser Packing Company, a corporation, of Los Angeles, Cal. The contract was executed by the plaintiff as the vendor, and as the party of the first part, and by the Hauser Packing Company by the defendant its agent as the vendee or purchaser, the

party of the second part. It was the claim of the plaintiff that Nielson was unauthorized to enter into the contract for and on behalf of the packing company, that the company refused to be bound by the contract or to carry out its terms, and thus the plaintiff sought to hold the defendant liable for damages sustained by him. The case was tried to the court, who on findings made rendered judgment in favor of the plaintiff and against the defendant in the sum of $4,700. The defendant appeals.

The sufficiency and certainty of the complaint, the sufficiency of evidence to support the findings, and the sufficiency of the findings to support the judgment, are challenged. The complaint is in three counts. The first and third were either dismissed or eliminated. The case proceeded to trial on the second count. It is somewhat uncertain as to the theory on which the complaint proceeds. The substance of it is: That on or about October 10, 1925, the defendant, in Sanpete county, Utah, where both the defendant and the plaintiff resided, "for a good and valuable consideration promised and agreed" with plaintiff that the defendant "was the agent of the Hauser Packing Co., of Los Angeles, Cal., and that as such agent he was authorized to act for and on behalf of the said company in the purchase of or to contract to purchase lambs for delivery between January 1 and March 1, 1926, and that as such agent he was ready and willing and authorized to contract for the purchase of plaintiff's lambs according to the contract attached" to the complaint and made a part thereof. The contract recites that it is an agreement or contract made and entered into October 10, 1925, "by and between John W. Christensen of Fairview, Utah, party of the first part, and Hauser Packing Co., of Los Angeles, Cal., party of the second part"; that the party of the first part "hereby sells and agrees to deliver on board cars at Fairview, Utah, * * * 1,700 head of fat lambs at fourteen cents per pound between January 1 and March 1, 1926," the lambs to be in good healthy shipping condition and free from foreign matter

at the time of weighing, and to be weighed with dry fleece after twelve hours in a dry corral without feed or water, or four per cent shrinkage deducted; the lambs to be selected by the buyer from time to time within the limits of the agreement, and that "an advance of $1.00 per head, $1,700.00, by the party of the second part is hereby acknowledged as received by the party of the first part, balance of purchase price to be paid on delivery and fulfillment of this contract." The contract is signed by "John W. Christensen, party of the first part," and by "Hauser Packing Co., party of the second part per N. S. Nielson."

It is further alleged that on or about October 15, 1925, the plaintiff placed about 1,950 head of lambs on feed for the purpose of fattening them; that on January 2, 1926, approximately 600 head of lambs were fat and ready to be delivered according to the terms of the contract; that on February 20, 1926, 1,400 head of lambs were fat and ready to be delivered; and that the plaintiff was at all times ready and willing to deliver the lambs according to the contract. Then it is alleged that: "In consideration of the promises, statements and representations made by the defendant, the plaintiff promised and agreed to sell and deliver to the said Hauser Packing Co. 1,700 head of fat lambs to be delivered at Fairview, Utah, at the selection of the buyer between January 1 and March 1 1926, and the defendant purporting to act as agent for said Company promised and agreed to buy 1,700 head of fat lambs from the plaintiff and to receive them as above stated and pay therefor at the rate of fourteen cents per pound." It is further alleged that the defendant, "as plaintiff is informed and believes, was not the agent of the Hauser Packing Co. and had no authority to act for said Company in the purchase of or to contract to purchase lambs for delivery to said Company between January 1 and March 1, 1926, or to make the contract hereto attached"; that "the defendant or the Hauser Packing Co. did not select, receive or pay for said lambs between January 1 and March 1, 1926, or at all, and both the defendant

and the said Company refused and neglected to buy, receive or pay for the said lambs according to the agreement entered into between the plaintiff and the defendant acting for the said Company, and because of said acts of defendant plaintiff was obliged to sell said lambs for ten cents per pound, all of which damaged the plaintiff in the sum of $5,500.00," for which amount judgment was demanded.

It is urged that the complaint, among other things, is uncertain as to whether the plaintiff attempted to proceed on the theory that the defendant, because unauthorized as alleged to contract for and on behalf of the packing company, became personally liable on the contract as a party thereto and as such suable thereon for its breach, or on the theory that if the defendant was not so personally liable on the contract he was liable for a breach of an implied warranty of authority or in tort to the extent of damages resulting to the plaintiff through misrepresentations of the defendant's authority.

The rule is well settled that if one falsely, whether knowingly or through mistake, assumes to act as agent for another and enters into a contract in his name, or if an agent enters into a contract which is not within the scope of either his actual or apparent authority, and the contract is not ratified by the assumed principal, the agent is personally liable to the other party, in some form of action, for the loss sustained by reason of the wrongful assumption and representation of authority, providing the other party contracting with the assumed agent did not know of his want of authority. 2 Clark & Skyles on the Law of Agency, § 577. But by the great weight of modern authority, an agent cannot be sued or held liable on an unauthorized contract, unless it contains apt words to personally bind him on the contract; and where one pretending to be an agent has contracted as such without authority from his claimed and disclosed principal, the party contracted with may hold the assumed agent responsible for damages, to be measured, not by the contract, but by the injury re-

sulting from the agent's misrepresentation of authority. Notes to cases, *Peoples's National Bank* v. *Dixwell*, Ann. Cas. 1915D, 722; annotations to *Mendelsohn* v. *Holton*, 42 A. L. R. 1310; 3 Page on Contracts, § 7173; 1 Elliott on Contracts, § 464.

The theory on which this doctrine is founded is stated in the cited texts and cases. While the complaint is somewhat uncertain in the particulars indicated, yet we think fairly interpreted it shows that an action was attempted to be stated on the theory that the defendant, because of his alleged want of authority, himself became liable on the contract. It, however, is clear, and as it is alleged and as shown by the contract itself, the plaintiff contracted, not with the defendant, but with a disclosed principal, the Hauser Packing Company, as the purchaser and vendee of the lambs, and no language or words are contained in the contract whereby the defendant himself became bound by the contract; nor is there anything in the contract to indicate any intention that the defendant was to become personally liable on the contract or for any failure or breach to carry out its terms. Its unambiguous language shows an agreement whereby the plaintiff agreed to sell and deliver to the Hauser Packing Company, and the company agreed to buy, the lambs on the terms and conditions stated in the contract. And in the complaint it is alleged that "the plaintiff promised and agreed to sell and deliver to the Hauser Packing Co.," not to the defendant, 1,700 head of fat lambs to be delivered at Fairview, Utah, at the selection of the buyer, the Hauser Packing Company. It, however, is also alleged that in consideration of promises, statements, and representations of the defendant that he as the agent of the Hauser Packing Company was authorized to act for and on behalf of the company, he himself "purporting to act as agent for said Company promised and agreed to buy 1,700 head of fat lambs from the plaintiff and to receive them as above stated and to pay therefor at the rate of fourteen cents per pound"; and that both the

company and the defendant failed to select or receive or pay for the lambs, and that both "the defendant and the said Company refused and neglected to buy, receive or pay for the said lambs according to the contract entered into between the plaintiff and the defendant acting for said Company," to the plaintiff's damage in a sum the difference between the contract price and the price at which the plaintiff was required to sell the lambs. While the allegations of the complaint that the defendant himself had "promised and agreed to buy" the lambs and to pay for them at the rate of 14 cents a pound, and that he as well as the company had failed and neglected to do so, are inconsistent with and wholly unwarranted by the language of the contract, yet such allegations indicate an intention of the pleader to hold the defendant personally liable on the contract and for a breach of it. That by the great weight of authority the plaintiff may not do, except upon allegations and proof that the agent by some apt words or language in the contract personally bound himself as a party thereto or to carry out its terms.

The respondent in his brief does not disclaim, at least not openly, that his complaint is predicated on the theory of an action against the defendant on the contract. However, in portions of his brief he seemingly also claims to uphold the judgment on the theory of an implied warranty of authority. But his position cannot go beyond the theory stated in the complaint nor beyond the allegations therein contained. He there prescribed his case and is bound by his cast. However, let the complaint be viewed as an action not founded on the contract. A complaint, in an action against an agent, which shows on its face that he was a mere agent acting for a known and disclosed principal in a matter in question, does not state a cause of action against him, unless it also states facts bringing him within one of the classes of agents who may be sued. In actions for damages for false assumption of authority on the part of an assumed agent to represent an as-

sumed and disclosed principal, three forms of remedy have been recognized as available to the other party to the contract, each being based upon a distinction in the nature of the liability: (1) An action against the agent upon the contract as principal in the contract; (2) an action against the agent for damages for breach of his implied warranty of authority to execute the contract; and (3) an action on the case for deceit or misrepresentation of the agent as to his assumption of authority. 2 Bancroft, Code Pleading, § 829; notes to *Haupt* v. *Vint*, 34 L. R. A. (N. S.) 518; and authorities heretofore cited. As has been seen, by the great weight of modern authority the first is not available, in the absence of apt words or appropriate language in the contract personally binding the agent and rendering him liable on the contract. Here there are no such words or language in the contract. The authorities generally agree that when an action is founded on either the second or third remedy the measure of damage is different from that in an action where the agent is sought to be personally held on the contract and for a breach of it. The complaint here contains no allegation of damage, except such as resulted from a breach of the contract; the allegation in such respect being that not only the company but the defendant himself promised and agreed to buy 1,700 head of lambs at 14 cents a pound, and that both the company and the defendant failed and refused to buy the lambs or pay for them "according to the agreement entered into between the plaintiff and the defendant," by reason of which the plaintiff was required to sell the lambs at 10 cents a pound and thereby lost the difference between the contract price of 14 cents and 10 cents, which, as alleged, constituted his measure of damages. No other damage or resulting injury is alleged. The damage and injury as alleged is nothing more than an allegation of damage or injury resulting from a breach of the contract. Under the authorities, the defendant, on the theory of either the second or third remedy, cannot be held liable for such breach, nor can his liability for damage or injury be meas-

ured on any such basis. To predicate an action on either the second or third remedy, it is not only essential to aver that the assumed agent had no authority to represent the assumed and disclosed principal, but also that the other party to the contract was without knowledge that the agent had no such authority, in good faith believed that the agent had authority, and relied on the implied or misrepresentation of authority. 2 Bancroft Code Pleading, § 831; 2 Clark & Skyles on the Law of Agency, § 577; 3 Page on Contracts, § 1773; 1 Elliott on Contracts, §§ 463, 464. There are no such allegations in the complaint. Thus, the complaint does not state a cause of action on the theory of either the second or the third remedy. Nor, as has been seen, does it state a cause of action on the first remedy. The general demurrer to the complaint thus ought to have been sustained.

We now look to the findings and to the question of sufficiency of the evidence. In the complaint it was alleged that the defendant was not the agent of the Hauser Packing Company and had no authority whatever to act for the company in the purchase of the lambs or to ∎ contract for the purchase of them. At the conclusion of the evidence and on a submission of the cause, the court by a written opinion made and filed in the cause and made a part of the bill of exceptions, held that there was a direct conflict in the evidence as to whether defendant had any authority to act as agent for the company in the purchase of the lambs; but the court by such written opinion further found and held that by a preponderance of the evidence it was shown that the defendant was authorized by the company to purchase for it and on its account up to 10,000 head of lambs in the vicinity of Fairview and Mt. Pleasant, Utah, at a price not to exceed 14 cents per pound for lambs weighing less than 90 pounds per head and 13½ cents per pound for lambs weighing 90 pounds or more per head. The contract of October 10, 1925, and attached to the complaint and made a part thereof, provided for the purchase of 1,700 head of lambs at 14 cents per pound regardless of the weight

of the lambs. It was only in such particular that the court found that the defendant was not authorized to purchase and contract for the lambs and only in such particular exceeded his authority. The finding which the court made in such respect is:

"That the defendant in making the said contract with the plaintiff, exceeded his authority as agent of the Hauser Packing Company; that the defendant had no authority as agent of said Hauser Packing Company to contract for plaintiff's lambs at the price of fourteen cents per pound and no authority from said Company to make and execute the contract herein mentioned with the plaintiff."

While the written filed opinion may not be looked to to take the place of or to modify or contradict the findings, yet it may be looked to to explain and interpret them. But looking alone at the finding and to the pleadings and the contract made a part thereof, the finding but means that the defendant in entering into the contract as the agent of the packing company exceeded his authority to contract to pay 14 cents per pound for the lambs regardless of weight. As stated by the trial court in its filed written opinion, the evidence is in conflict as to whether the defendant was authorized in any particular to purchase lambs for and on behalf of the packing company; but the statement by the court that by a preponderance of the evidence it was shown that the defendant was authorized by the packing company to purchase for it and on its account 10,000 head of lambs in the vicinity of Fairview and Mt. Pleasant at 14 cents a pound for lambs weighing less than 90 pounds per head and 13½ cents a pound for lambs weighing 90 pounds or more is amply sustained by the record.

Upon such a situation, two questions arise: (1) As to whether the plaintiff had knowledge that the defendant's authority in purchasing lambs for the packing company was restricted to 14 cents per pound for lambs weighing less than 90 pounds per head and 13½ cents per pound for lambs weighing more than 90 pounds; and (2) if not, in

view that the packing company had authorized the defendant to buy for it 10,000 lambs in the vicinity of Fairview and Mt. Pleasant at the restricted price, was the packing company nevertheless liable to the plaintiff on the contract though the defendant exceeded his actual authority as to the price by agreeing to pay 14 instead of 13½ cents per pound for lambs weighing 90 pounds or more? As to the first question, the record shows that the plaintiff sought the defendant and offered to sell 1,000 head of lambs. A written contract was entered into October 2, 1925, stating that the plaintiff, as party of the first part, sold and agreed to sell and deliver to the Hauser Packing Company "1,000 fat lambs at fourteen cents per pound, lambs over 90 pounds to go at thirteen and one-half cents," delivery to be made between January 1 and March 1, 1926. It further recited that $1,000, or $1 per head, was paid as part payment, the receipt of which was acknowledged by the plaintiff. That contract was prepared by the defendant and was signed by the plaintiff. About a week thereafter, or on October 10, 1925, the plaintiff again sought the defendant and offered to sell 700 additional lambs. A new contract was prepared, the contract attached to the complaint, wherein the purchase of the first 1,000 lambs was included, or a total of 1,700 head of lambs. There is a dispute in the evidence as to whether that contract was prepared by the plaintiff or the defendant. The plaintiff testified it was prepared by the defendant, and the defendant testified that it was prepared by the plaintiff or his counsel. The new contract, as is seen, was for purchase of 1,700 head of lambs at 14 cents per pound regardless of weight, and in such respect differed from the first contract. The plaintiff, however, had already contracted to sell 1,000 lambs at 14 cents per pound for lambs weighing less than 90 pounds and 13½ cents a pound for lambs weighing 90 pounds or more per head, yet in executing the new contract he insisted that the company not only pay 14 cents per pound regardless of weight for the 700 additional lambs but also for the 1,000

lambs theretofore sold and for which he had received $1,000 as part payment of the purchase price. As to this particular matter the plaintiff testified that when the first contract was made he objected to the clause in the contract that he was to have only 13½ cents per pound for lambs weighing 90 pounds or more per head; that he tried to talk the defendant out of inserting such a clause in the contract, tried to have him eliminate it and to make the purchase price straight 14 cents per pound regardless of the weight of the lambs, but that the defendant declined to do so, and thereupon the plaintiff signed the contract, but, as he testified, with the oral understanding with the defendant that if the packing company would not take the larger lambs at 14 cents a pound, the defendant himself would take such lambs and pay the plaintiff for them at the rate of 14 cents a pound.

The defendant testified that his only authority was to pay 14 cents a pound for lambs weighing less than 90 pounds and 13½ cents for lambs weighing 90 pounds or more per pound; that the plaintiff made some objections to the clause in the contract of 13½ cents per pound for lambs weighing over 90 pounds per head; that the plaintiff did not like the contract with such clause in it. When the new contract was signed, it eliminated the clause of the payment of only 13½ cents per pound for lambs weighing over 90 pounds and in place thereof had a clause to pay 14 cents a pound regardless of the weight of the lambs. In the discussion of such feature of the contract, the defendant testified that he told the plaintiff that his "instructions were" to pay a price as stated in the first contract, and that he "couldn't do anything else"; that upon further discussion the defendant finally told the plaintiff that he would put the price in the contract at 14 cents per pound regardless of weight, but that if the packing company objected to it, the plaintiff would be required to take only 13½ cents per pound for lambs weighing 90 pounds or more per head; that the plaintiff agreed to that, and upon such understanding the price was

put in the contract at 14 cents per pound regardless of weight; and that it was then signed by the plaintiff and by the packing company per the defendant. The defendant denied that he told the plaintiff that he himself would take all or any of the lambs over 90 pounds per head. The testimony of the defendant that he told the plaintiff that his instructions were to pay only 13½ cents a pound for lambs weighing over 90 pounds per head and that he "couldn't do anything else" was not disputed to the plaintiff. The principal dispute between them as to such feature was that the plaintiff testified that the defendant told him that if the Hauser Packing Company did not take the lambs weighing over 90 pounds at 14 cents per pound, the defendant would take them at that price; the defendant that if the Hauser Packing Company did not take the larger lambs at that price, the plaintiff would have to let them go at 13½ cents per pound.

From all this it is quite clear that the plaintiff knew that the defendant was not authorized by the Hauser Packing Company to pay 14 cents per pound regardless of weight, and that the defendant was authorized to pay only the price as indicated in the first contract signed by the plaintiff. In such view it is unnecessary to consider whether the Hauser Packing Company was liable to the plaintiff or not on the contract, though the plaintiff was without knowledge as to the restrictions given the defendant by the company as to the price to be paid for lambs. At any rate, upon such a material question it was essential to aver, prove, and find that the plaintiff was without such knowledge. But such fact was not alleged, proven or found. The failure of such averment and proof, unless the defendant was primarily liable on the contract as a principal, which he was not, alone is sufficient to require a reversal of the judgment. It would be a reproach on the law if the plaintiff, with knowledge that the defendant had restricted authority as to the price to be paid for lambs and had no authority to pay what was finally contracted to be paid and without allegations

and proof that the plaintiff was without such knowledge and that he relied on false representations as to the defendant's authority, should be permitted to hold the defendant in damages for an alleged breach of the contract to which he was not a party and had not personally obligated himself to carry out its terms.

Let the judgment be reversed and the cause remanded for a new trial. Such is the order. Costs to the appellant.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.