2003 UT App 314

STATE of Utah, Plaintiff and Appellee,

v.

Anthony James VALDEZ, Defendant and Appellant.

No. 20020892–CA.

Court of Appeals of Utah.

Sept. 18, 2003.

---

Heather Johnson and John D. O'Connell Jr., Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney Generals Office, and Kris C. Leonard, Assistant Attorney General, Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., and DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Anthony James Valdez appeals his conviction and sentence under Utah's forgery statute, Utah Code Ann. § 76-6-501 (1999), a third degree felony. We affirm.

## BACKGROUND

¶ 2 On October 29, 2001, Amber Hamlin left her vehicle at Master Muffler & Brake (the shop) in Kearns, Utah, for repairs on her vehicle's exhaust system and to replace the catalytic converter. When she returned to pick up her vehicle, she was accompanied by Appellant, Anthony James Valdez. As she spoke with the mechanic, Valdez entered the shop office. Valdez informed the shop manager that he wished to pay Hamlin's repair bill because he owed her money. Valdez presented a check, which was filled out beforehand, for the repair work. The check belonged to and had the purported signature of James Batley. The manager of the shop also wrote down the driver license number and expiration date from the license produced by Valdez. Police later found that the license belonged to another individual unconnected to this case. Valdez also signed the name James Batley to a form required by the Environmental Protection Agency whenever a catalytic converter is replaced.

¶ 3 Ten days later, the check was returned to the shop marked "LOST/STOLEN." The assistant manager of the shop called James Batley, who informed him that his checks were stolen, that he had not signed any of the checks before they were stolen, that he had not given anyone permission to sign his name on his checks, and that he did not know either Hamlin or Valdez.

¶ 4 Detectives later traced the check and catalytic converter form to Valdez through a fingerprint analysis where detectives found at least twelve points of comparison between a print on the catalytic converter form and Valdez's left ring finger. The State then charged Valdez with forgery.

¶ 5 After the State rested its case at Valdez's trial, Valdez sought a directed verdict based on an alleged lack of evidence to prove the forgery charge, and, pursuant to Utah's *Shondel* doctrine, *see State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969), argued that his case should have been charged as identity fraud under Utah Code Ann. § 76-6-1102 (Supp.2003). The trial court denied Valdez's motions, but gave a lesser-included offense instruction on identity fraud.[1] *See id.* Valdez was subsequently convicted and sen-

---

1. Although Valdez argued at trial that identity fraud is a lesser included offense of forgery, Valdez did not waive his *Shondel* argument before this court because he originally moved the trial court to reduce the forgery charge to an identity fraud charge based upon Utah's *Shondel* doctrine, and the court gave the identity fraud instruction. *See State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969).

tenced under the forgery statute. *See* Utah Code Ann. § 76–6–501 (1999). He now appeals the trial court's refusal to amend the forgery charge to an identity fraud charge and, based upon the *Shondel* doctrine, seeks to be sentenced under the more lenient identity fraud statute.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The sole issue on appeal is whether the trial court erred in determining that Utah Code Ann. § 76–6–501 (1999) and Utah Code Ann. § 76–6–1102 (Supp.2003) do not proscribe the same conduct, thereby rendering the *Shondel* doctrine inapplicable.

¶ 7 "Because the determination of whether two statutes proscribe the same conduct is a matter of statutory construction, it is a question of law that we review for correctness." *State v. Fedorowicz*, 2002 UT 67,¶ 49, 52 P.3d 1194, *cert. denied*, 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003). "Our review under the *Shondel* rule focuses on the trial court's legal conclusions, which we review under a correction-of-error standard, according no particular deference to the trial court's ruling." *State v. Green*, 2000 UT App 33,¶ 5, 995 P.2d 1250 (quotations and citations omitted).

## ANALYSIS

¶ 8 Valdez argues that Utah Code Ann. § 76–6–501 (1999) and Utah Code Ann. § 76–6–1102 (Supp.2003) proscribe the same conduct. Based upon this argument, Valdez argues that the *Shondel* doctrine is applicable and, therefore, the trial court erred by

not sentencing him under section 76–6–1102 because it carries a lesser penalty than section 76–6–501.

¶ 9 "The *Shondel* doctrine requires that when two different statutory provisions define the same offense, a defendant must be sentenced under the provision carrying the lesser penalty." *State v. Green*, 2000 UT App 33,¶ 6, 995 P.2d 1250. However, "[t]he doctrine necessarily applies only when the two statutes address 'exactly the same conduct.'" *State v. Bluff*, 2002 UT 66,¶ 33, 52 P.3d 1210 (quoting *State v. Gomez*, 722 P.2d 747, 749 (Utah 1986)), *cert. denied*, 537 U.S. 1172, 123 S.Ct. 999, 154 L.Ed.2d 914 (2003). "[I]f the elements of the crime[s] are not identical and the relevant statutes require proof of some fact or element not required to establish the other, the statutes do not proscribe the same conduct and ... [a defendant] may be charged with the crime carrying the more severe sentence...." *Green*, 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (third and fourth alterations in original) (quotations and citations omitted). "Accordingly, to determine if the trial court erred ... we must compare the plain language of [the two statutes in question] to resolve whether they prohibit the same conduct and whether the elements of each crime are wholly duplicative." *State v. Fedorowicz*, 2002 UT 67,¶ 49, 52 P.3d 1194 (quotations and citations omitted), *cert. denied*, 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003).

¶ 10 Valdez was charged, convicted, and sentenced under Utah's forgery statute, section 76–6–501.[2] He argues that, according to

2. Utah Code Ann. § 76–6–501 (1999) reads in relevant part:

(1) A person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he:
(a) alters any writing of another without his authority or utters any such altered writing; or
(b) makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another, whether the person is existent or nonexistent, or purports to have

been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.
(2) As used in this section, "writing" includes printing, electronic storage or transmission, or any other method of recording valuable information including forms such as:
(a) checks, tokens, stamps, seals, credit cards, badges, trademarks, money, and any other symbols of value, right, privilege, or identification;
(b) a security, revenue stamp, or any other instrument or writing issued by a government or any agency; or
(c) a check, an issue of stocks, bonds, or any other instrument or writing representing

Utah's *Shondel* doctrine, he should have been sentenced under section 76–6–1102(3), the more lenient identity fraud statute.[3] Valdez argues that the two statutes contain the same five basic elements: (1) the action elements; (2) the actual information used by a perpetrator; (3) acting without authorization from the person whose information is used; (4) the mental intent; and (5) acting with fraudulent intent.

¶ 11 The State argues that the statutes contain three distinct elements. First, the forgery statute requires a perpetrator to use a writing, as defined by the forgery statute, while identity fraud may be accomplished without the use of a writing. Second, forgery may be committed by using a writing that purports "to be the act of another, whether the person is existent or nonexistent," Utah Code Ann. § 76–6–501(1)(b), while identity fraud requires the use of information from a living person. Finally, the two statutes are distinguished because identity fraud requires proof of the value of services wrongfully obtained, *see* Utah Code Ann. § 76–6–1102(3), whereas forgery does not.

¶ 12 Based upon the plain language of these two statutes, we conclude that each statute "require[s] proof of … element[s] not required [by] the other." *Green*, 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (quotations and citations omitted). To convict a defendant of forgery, the State is required to prove, among other elements, that the defendant used a writing in the commission of the crime. A writing includes:

    (2) printing, electronic storage or transmission, or any other method of recording valuable information including forms such as:

      (a) checks, tokens, stamps, seals, credit cards, badges, trademarks, money,

and any other symbols of value, right, privilege, or identification;

      (b) a security, revenue stamp, or any other instrument or writing issued by a government or any agency; or

      (c) a check, an issue of stocks, bonds, or any other instrument or writing representing an interest in or claim against property, or a pecuniary interest in or claim against any person or enterprise.

Utah Code Ann. § 76–6–501(2)(a)–(c).

¶ 13 The identity fraud statute does not require that any of the elements of a writing, as defined by section 76–6–501, be used to perpetrate an identity fraud. An individual commits identity fraud when that individual

    (a) obtains personal identifying information of another person; and

    (b) uses, or attempts to use, that information with fraudulent intent, including to obtain, or attempt to obtain, credit, goods, services, any other thing of value, or medical information in the name of another person.

Utah Code Ann. § 76–6–1102(2)(a)–(b).

¶ 14 While there may be instances where forgery may be utilized to accomplish identity fraud, *cf. State v. Chukes*, 2003 UT App 155, ¶ 18, 71 P.3d 624 (illustrating that, in certain instances, forgery may be a lesser included offense of identity fraud), the *Shondel* rule is not implicated. *Shondel* is not applicable where "the relevant statutes require proof of some fact or element not required to establish the other." *Green*, 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (quotations and citations omitted). The crime of forgery *always* requires the use of a writing, as defined under the forgery statute; identity fraud may be committed without ever using a

---

an interest in or claim against property, or a pecuniary interest in or claim against any person or enterprise.

**3.** Utah Code Ann. § 76–6–1102(2), (3)(a) (Supp. 2003) provides:

    (2) A person is guilty of identity fraud when that person knowingly or intentionally:

      (a) obtains personal identifying information of another person; and

      (b) uses, or attempts to use, that information with fraudulent intent, including to obtain, or attempt to obtain, credit, goods, services, any other thing of value, or medical information in the name of another person.

    . . . .

    (3) Identity fraud is:

      (a) a class A misdemeanor if the value of the credit, goods, services, or any other thing of value is less than $1,000[.]

writing. Valdez argues that merely using the personal identifying information of another person, as proscribed under the identity fraud statute, is the same conduct as using a writing, as defined under the forgery statute. This argument fails because "personal identifying information" of another could be used without using a "writing." *Compare* Utah Code Ann. § 76–6–1102(1), *with* Utah Code Ann. § 76–6–501(2) (the definition of "personal identifying information" under section 76–6–1102(1) does not necessarily encompass a "writing," as defined under section 76–6–501(2)).

¶ 15 The two statutes are further distinguished because Utah's identity fraud statute requires personal identifying information to be taken from "another person," Utah Code Ann. § 76–6–1102(2)(a), while the forgery statute encompasses a "writing" that "purports to be the act of another, whether the person is existent or nonexistent." Utah Code Ann. § 76–6–501(1)(b). Valdez argues that the "another person" requirement of section 76–6–1102 could include nonexistent persons, but this reading of the statute is strained. As Valdez points out, under the Utah Criminal Code, "[p]erson" is defined as "an individual, public or private corporation, government, partnership, or unincorporated association." Utah Code Ann. § 76–1–601(8) (1999). However, none of these definitions are inconsistent with the "nonexistent" person provision in section 76–6–501(1)(b). An individual who creates a nonexistent person out of whole cloth that is not "an individual, public or private corporation, government, partnership, or unincorporated association," Utah Code Ann. § 76–1–601(8), in order to commit a forgery, does not commit identity fraud.

¶ 16 Finally, the identity fraud statute contains a proof of value element. The provision of section 76–6–1102(3) applicable to this case states "[i]dentity fraud is ... a class A misdemeanor if the value of the credit, goods, services, or any other thing of value is less than $1,000[.]" Utah Code Ann. § 76–6–1102(3)(a). The forgery statute contains no such proof of value element, instead classifying all forgeries as "a felony of the third degree." Utah Code Ann. § 76–6–501(3).

Contrary to Valdez's assertions, the proof of value element of the identity fraud statute does not apply only to sentencing. The State must still prove beyond a reasonable doubt, at trial, the value of what was attained. Therefore, we conclude that the proof of value element under the identity fraud statute further distinguishes the forgery and identity fraud statutes.

¶ 17 Because "the elements of the crime[s] are not identical and the relevant statutes require proof of some fact or element not required to establish the other, the statutes do not proscribe the same conduct." *Green*, 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (quotations and citations omitted). Therefore, the *Shondel* doctrine is inapplicable in this case.

## CONCLUSION

¶ 18 We conclude that the trial court did not err in determining that the forgery statute, Utah Code Ann. § 76–6–501 (1999), and the identity fraud statute, Utah Code Ann. § 76–6–1102 (Supp.2003), do not proscribe the same conduct. Therefore, we conclude that the trial court did not err in determining that the *Shondel* doctrine was inapplicable in this case. Accordingly, we affirm Valdez's conviction and sentence under the forgery statute.

¶ 19 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and GREGORY K. ORME, Judge.