*595
 
 OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Defendant was convicted of forgery in the second degree (Penal Law § 170.10) for signing his own name to a corporate check, in excess of his authority. Because defendant’s conduct does not constitute forgery under our statute, we reverse his conviction.
 

 L
 

 As the owner of a logging operation, Peter Morat planned to open a sawmill business in Madison County, under the name Herkimer Precut, Inc. He engaged defendant as a consultant to arrange for financing and related activities. In exchange for his services, defendant was to receive a 20% interest in the new venture. As the project progressed, Morat turned over various financial aspects of the business to defendant, entrusting him with control over the corporate checkbook. Because defendant was responsible for paying bills, Morat would sometimes provide defendant with blank, signed checks. At no time, however, did Morat authorize defendant to sign any checks.
 
 [1]
 

 After Morat discovered that corporate bills were not being paid, he examined the company’s bank records and found unauthorized payments, some on checks he had signed in blank and others bearing a signature he did not recognize. Morat alleged that by improperly signing or issuing checks, defendant stole thousands of dollars from Herkimer Precut.
 

 In two indictments consolidated for trial, a Montgomery County grand jury charged defendant with one count of grand larceny in the second degree, 15 counts of forgery in the second degree and 15 counts of criminal possession of a forged instrument in the second degree. A single count survived the trial: the forgery conviction before us, stemming from a $195.50 Herkimer Precut check defendant wrote to Nancy Herrick for work performed by Northeast Woodcraft.
 
 [2]
 
 In Montgomery County, defendant signed his own name to that check, telling Herrick that
 
 *596
 
 he owned Herkimer Precut. Herrick was acquainted with defendant personally and professionally and knew that he was affiliated with Herkimer Precut. She did not know, however, that Morat owned the company and that defendant lacked authority to sign checks. The check was for defendant’s personal expenses.
 

 A divided Appellate Division affirmed defendant’s conviction. We agree with the dissenters that forgery was not proved.
 

 IL
 

 In
 
 People v Levitan
 
 (49 NY2d 87, 90 [1980]), we held that “[w]hile it is true that in certain rare instances one may commit a forgery by signing one’s own name, this is so only where the signing is done in such a way as to deceive others into believing that the signer is in fact some third party.” Levitan signed her name to deeds purporting to convey real property she did not own. In reversing her forgery conviction, we noted that “no pretense was ever made that the signatory was anyone other than defendant”
 
 (id.
 
 at 89). We also observed that “[u]nder our present Penal Law, as under prior statutes and the common law, a distinction must be drawn between an instrument which is falsely made, altered or completed, and an instrument which contains misrepresentations not relevant to the identity of the maker or drawer of the instrument”
 
 (id.
 
 at 90).
 

 Although the Legislature has updated the statute
 
 [3]
 
 to cover credit cards
 
 (see
 
 L 1984, ch 949, § 1) and certain other technological advances
 
 (see
 
 L 1996, ch 357, § 4), it has not abrogated
 
 Levitan’s
 
 classic approach to forgery. In defining forgery, Penal Law § 170.00 (4) provides, in pertinent part, that “[a] person ‘falsely makes’ a written instrument when he makes or draws a complete written instrument . . . which purports to be an
 
 authentic creation of its ostensible maker or drawer,
 
 but which is not such . . . because the ostensible maker or drawer
 
 *597
 
 . . . did not authorize the mating or drawing thereof’ (emphasis supplied).
 

 The terms “authentic creation” and “ostensible maker” are pivotal. In most prosecutions, the forger, acting without authority, signs someone else’s name. Thus, in a typical case, the forger, John Doe, wrongfully signs Richard Roe’s name, (mis)leading the payee into believing that the check is the authentic creation of Richard Roe, its ostensible maker. Roe, of course, has not granted Doe any such authority and in many such instances has never even met Doe. In this simple formulation, the ostensible maker (Roe) and the actual maker (Doe) are two different people. If, however, the ostensible maker and the actual maker are one and the same, there can be no forgery under the statute.
 

 Not surprisingly, the parties here disagree as to who is the ostensible maker. The prosecution argues that it is Herkimer Precut; defendant argues that he, the actual maker, is also the ostensible maker. They also disagree as to whether the check was the authentic creation of its ostensible maker.
 

 The People contend that Herkimer Precut is the ostensible maker because its name appears on the check as owner of the account. Further, they argue that because defendant lacked authority to sign company checks, the check in question was not the authentic creation of the company, and a forgery is made out. Defendant counters that the check was an authentic creation of its ostensible maker and that because he signed his own name, he cannot be guilty of forgery: as the ostensible maker, he did not pretend to be anyone other than himself—the actual maker. Moreover, defendant argues that even if Herkimer Precut was the “ostensible maker” of the check, defendant’s relationship with Herkimer Precut was sufficient to make the check the “authentic creation” of the company. In
 
 People v Briggins
 
 (50 NY2d 302, 307 [1980]), we observed that “when an individual signs a name to an instrument and acknowledges it as his own, that
 
 person
 
 is the ‘ostensible maker.’ ” Although
 
 Briggins
 
 involved a slightly different setting (and not a corporate check, as here), its language along with the statute’s history and purpose, informs our analysis and supports defendant’s position.
 

 Forgery is a crime because of the need to protect signatures and make negotiable instruments commercially feasible (see
 
 generally
 
 Kessler,
 
 Forged Indorsements,
 
 47 Yale LJ 863 [1938]).
 
 *598
 
 In its common-law roots, forgery had little to do with abstract questions of authority.
 
 [4]
 
 5At Queen’s Bench, Chief Justice Cock-burn wrote that forgery “by universal acceptation ... is understood to mean . . . the making or altering of a writing so as to make the writing or alteration purport to be the act of some other person, which it is not”
 
 (In re Windsor,
 
 6 Best & Sm 522, 122 Eng Rep 1288, 1290 [1865]). As one treatise explains, “it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so” and “the signer is guilty of false pretenses only” (Clark and Marshall, A Treatise on the Law of Crimes § 12.34, at 957 [7th ed 1967]). Although statutes vary, most jurisdictions in this country have tended to follow the
 
 Windsor
 
 approach to forgery
 
 (see e.g.
 
 2 Wharton, Criminal Law § 859, at 1162-1163 [12th ed 1932]).
 

 In
 
 Gilbert v United States
 
 (370 US 650 [1962]), the Court considered whether a federal forgery statute included misrepresented agency. An accountant endorsed a government check written to a client by signing the name of the payee and then his own, as agent. He had no authority to do so. Under the federal statute, forgery “does not embrace a purported, but misrepresented, agency endorsement”
 
 (id.
 
 at 652). Recognizing the common-law origins of that statute, the Court
 
 (id.
 
 at 655) quoted
 
 Regina v White
 
 (2 Car & K 404, 413, 175 Eng Rep 167, 170 [1847]), which held that “indorsing a bill of exchange under a false assumption of authority to indorse it per procuration, is not forgery, there being no false making.”
 
 [5]
 

 As the court noted in
 
 United States v Young
 
 (282 F3d 349, 351-352 n 1 [5th Cir 2002]), “[t]he majority of state law cases hold that signing one’s own name on one’s own check without
 
 *599
 
 sufficient funds to cover the amount of the check does not constitute forgery. In these cases, the person writing the check is not trying to pass himself off as someone else. . . . The same principle applies when an agent signs a company check without actual authority to do so.”
 
 [6]
 
 We conclude that authority and authenticity are not the same thing. Defendant did not commit forgery merely by exceeding the scope of authority delegated by the corporation.
 
 [7]
 
 8Our interpretation leaves no gap in the Penal Law. Although embezzlers who use their own names to sign checks beyond their authority are not guilty of forgery in New York, their conduct would ordinarily fall within our larceny statutes
 
 (see
 
 Penal Law § 155.00
 
 et seq.; see also,
 
 n 2 at 595.
 

 Moreover, importing issues of authority into the statute, without express legislative language, would create vexing problems in adjudging forgery cases. If, for example, a corporate officer authorized to sign corporate checks does so for a personal purchase, is that forgery? Would an officer authorized to sign checks up to $20,000 who signs a check for $25,000 be guilty of forgery? While the prosecution argues that we should read our statute to justify convictions in those instances, it has not identified any New York decision interpreting the statute that expansively.
 
 [8]
 

 
 *600
 
 Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Graffeo, Read and R.S. Smith concur.
 

 Order reversed, etc.
 

 [1]
 

 . Although defendant contends Morat gave him authority to sign certain checks, the jury necessarily concluded that authority was lacking. On appeal from a conviction, we must consider the evidence in the light most favorable to the People
 
 (see e.g. People v Barney,
 
 99 NY2d 367, 371 [2003];
 
 People v Hitchcock,
 
 98 NY2d 586, 591 [2002]).
 

 [2]
 

 . The defense claimed that Montgomery County had no jurisdiction over the alleged crimes. Herkimer Precut was based in Madison County. The company’s only checking account was with an office of Manufacturers and Traders Trust Company in Onondaga County. The bank mailed state
 
 *596
 
 ments to a Madison County address. Defendant was a resident of Oneida County. In rendering its verdict, the jury announced that defendant was “Not guilty. No jurisdiction” with respect to the first count, grand larceny. As the foreman continued to read the verdicts on other counts, he said “Not guilty.” At that point, the judge interrupted and asked whether the jury found defendant not guilty or whether there was a lack of jurisdiction. The foreman then explained that the jury had found no jurisdiction as to 19 of the counts (presumably because defendant’s acts did not take place in Montgomery County). However, no question regarding jurisdiction or the form of the verdict is before us. The appeal deals only with whether defendant committed forgery by signing the check in question.
 

 [3]
 

 . Our current forgery statutes have their roots in Penal Code of 1881 §§ 509-527.
 

 [4]
 

 . Lord Coke illustrated this point, describing the crime’s derivation: “[t]o forge is metaphorically taken from the smith who beateth upon his anvill, and forgeth what fashion or shape he will: the offence ... is called
 
 crimen falsi,
 
 and the offender
 
 falsarius,
 
 and the Latin word to forge is
 
 falsare
 
 or
 
 fabricare.
 
 And this is properly taken when the act is done in the name of another person” (3 Edward Coke, Institutes of the Laws of England, ch 75, at 168 [1644];
 
 see also 4
 
 William Blackstone, Commentaries on the Laws of England, at 245 [1769] [defining forgery as “the fraudulent making or alteration of a writing to the prejudice of another man’s right”]).
 

 [5]
 

 .
 
 See also Greathouse v United States,
 
 170 F2d 512, 514 (4th Cir 1948) (holding that “[i]t is well established that forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker” and therefore “it is not forgery for one, with intent to defraud, to issue a check in his own name on a bank in which he has no funds”); Edwards, Annotation,
 
 Commerce—“Forged Security,” 4
 
 ALR Fed 793, 803, § 6.
 

 [6]
 

 . (Citing
 
 Levitan,
 
 49 NY2d 87 [1980];
 
 see also People v Mann,
 
 75 NY 484 [1878];
 
 Matter of Heilbonn,
 
 1 Parker Grim Rep 429, 434 [Sup Ct, NY 1853];
 
 Commonwealth v Baldwin,
 
 77 Mass 197, 198, 11 Gray 197 [1858];
 
 People v Bendit,
 
 111 Cal 274, 43 P 901 [1896];
 
 State v Wilson,
 
 28 Minn 52, 56, 9 NW 28, 30 [1881];
 
 People v James,
 
 178 Colo 401, 405, 497 P2d 1256, 1258 [1972];
 
 State v Taylor,
 
 46 La Ann 1332, 16 So 190 [1894];
 
 Mallory v State,
 
 179 Term 617, 168 SW2d 787 [1943];
 
 Sales v State,
 
 628 SW2d 796, 798-799 [Tex Grim App 1982];
 
 Leslie v State,
 
 10 Wyo 10, 24, 69 P 2, 3 [1902];
 
 Charter Bank Northwest v Evanston Ins. Co.,
 
 791 F2d 379 [5th Cir 1986];
 
 In re Tally,
 
 20 F 812, 814-815 [SD NY 1884]; Greenberg, New York Criminal Law § 16:3, at 684 [6 West’s NY Prac Series 2002]; 2 Groble, Callaghan’s Criminal Law in New York § 26:06 [3d ed 1998]; 10 Zett, New York Criminal Practice H 111.1 [2], at 111-4; 37 CJS, Forgery § 13, at 76.) While some states have adopted a contrary, broad conception of forgery, they have tended to do so based on statutes that have expanded the crime beyond its common-law boundaries
 
 (see e.g. People v Susalla,
 
 392 Mich 387, 220 NW2d 405 [1974];
 
 In re Clemons,
 
 168 Ohio St 83, 85, 151 NE2d 553, 555-556 [1958]).
 

 [7]
 

 . We recognize that theft of a check might be different from embezzlement, but have no occasion to decide whether it would be forgery to sign one’s own name on a corporate check when having no connection with the corporation.
 

 [8]
 

 . In
 
 People v Cannarozzo
 
 (62 AD2d 503 [4th Dept 1978]), the Court properly reversed a conviction for criminal possession of a forged instrument.
 
 *600
 
 An agent of the Commissioner of Motor Vehicles issued a drivers license to defendant without requiring him to pass the requisite tests. Even though the agent did not have authority to issue licenses without giving the tests, the Court held that the license was not a forgery. The ostensible and actual maker of the license were the same: an agent of the Commissioner of Motor Vehicles. This Court affirmed without opinion (see 48 NY2d 687 [1979];
 
 accord Commonwealth v Apalakis,
 
 396 Mass 292, 486 NE2d 669 [1985]). We note that in the case before us neither the majority at the Appellate Division nor the prosecution relies on
 
 Cannarozzo.
 
 Nevertheless, to the extent the Appellate Division’s dictum in
 
 Cannarozzo
 
 suggests it would be forgery for an agent to sign one’s own name in excess of authority, we decline to follow that reasoning.