2004 UT App 467

STATE of Utah, Plaintiff and Appellee,

v.

Lamar JENSEN, Defendant and Appellant.

No. 20030453–CA.

Court of Appeals of Utah.

Dec. 16, 2004.

---

William B. Parsons III, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

BILLINGS, Presiding Judge:

¶ 1 Lamar Jensen appeals convictions of forgery and fraudulent handling of records. *See* Utah Code Ann. §§ 76–6–501, –503 (1999). We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Jensen was an officer of Pacific Nakon International, Inc. (Pacific). On July 2, 2001, Pacific entered into a lease agreement Lease with Baca Enterprises (BE) to develop BE's property, which is adjacent to Zion National Park. The Lease provided, in part, that upon Jensen's request, BE must subordinate its interest in the property to any developmental loans, mortgages, and deeds; and BE must execute all documents required by lending institutions.[1]

---

1. Paragraph 16 of the Lease states in relevant part:

 Upon request by Lessee, Lessor shall subordinate its interest in and to the Property to such construction and development loans, mortgages, promissory notes, and deeds of trust arising from, or related to, Lessee's development of the Property, and shall execute all documents required by such lenders or financial institutions, subject, however to a maximum combined limit of no more than $500,000 and to a limitation of no more than 12 months from the date hereof (or until July

¶ 3 Ted Baca, who was the president of BE, and Jensen each signed three copies of the Lease. Jensen retained two copies of the Lease, and Baca retained one copy of the Lease. Afterwards, Jensen realized that the Lease needed to be notarized before it could be recorded. Jensen contacted Baca, and on July 5, 2001, the parties met to have the Lease notarized. The page Jensen provided the notary, however, was the notary page prepared for a trust deed (Deed) Jensen had negotiated prior to the Lease's execution. The purpose of the Deed was to secure a promissory note against the leased property for approximately $235,000. Jensen neither informed Baca of the Deed, nor requested that Baca sign and execute the Deed on BE's behalf.

¶ 4 On the same day, Jensen executed the Deed. In doing so, Jensen signed the Deed individually and on behalf of Pacific. Jensen also signed his own name on the Deed on the line reserved for BE. Next to his signature on the line reserved for BE, Jensen wrote "see lease." Upon execution of the Deed, Jensen took the Lease and Deed to Southern Utah Title Company (Southern) where an employee looked over the documents and instructed Jensen to take the documents to the Kane County Recorder's Office for recording, which Jensen did. Once Jensen recorded the Lease and Deed, he returned them to Southern; and shortly thereafter, the lenders under the promissory note forwarded the money to Jensen.

¶ 5 A few days later, an employee at Southern realized that the notary page on the Deed did not match the signature page. The employee contacted Baca to request a meeting. At the meeting, on July 11, 2001, Baca signed the Deed on behalf of BE.

¶ 6 Jensen was subsequently charged with one count of forgery and one count of fraudulent handling of records, both third-degree felonies. At trial, the jury convicted Jensen of forgery and fraudulent handling of records. Jensen appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 First, Jensen argues that the trial court erred by denying his motion for direct-

1, 2002) that Lessor's position will be so subor-

ed verdict because the State failed to present a prima facie case for each element of the crime of forgery. When reviewing a trial court's denial of a motion for directed verdict, "we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41,¶ 12, 82 P.3d 1064. Because the "standard of review of a directed verdict is the same as that imposed upon the trial court," *Management Comm. of Graystone Pines Homeowners Ass'n. v. Graystone Pines, Inc.*, 652 P.2d 896, 898 (Utah 1982) (quotations and citation omitted), we examine "the trial court's decision to determine if the evidence at trial raised a question of material fact which precluded judgment as a matter of law," *Mahmood v. Ross*, 1999 UT 104,¶ 16, 990 P.2d 933.

¶ 8 Second, Jensen maintains that the trial court erred by denying his motion to reduce the fraudulent handling of the records charge under the *Shondel* doctrine. *See State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969). "Our review under the *Shondel* rule focuses on the trial court's legal conclusions, which we review under a correction-of-error standard, according no particular deference to the trial court's ruling." *State v. Green*, 2000 UT App 33,¶ 5, 995 P.2d 1250 (quotations and citation omitted).

## ANALYSIS

### I. Directed Verdict

¶ 9 Jensen first contends that the trial court erred by denying his motion for a directed verdict because the State failed to present a prima facie case for each element of the crime of forgery. Specifically, Jensen contends that the State failed to present evidence sufficient to raise a question of material fact as to whether by signing his own name to the Deed on the line reserved for

dinated.

BE, Jensen was purporting his signature to be the "act of another." [2] We agree.

¶ 10 Jensen argues that his signature on the Deed, which says "Lamar Jensen," could not be deemed to have been the act of anyone other than himself. Furthermore, Jensen alleges that there is a distinction between purporting to be another and purporting to act with authority one does not have.

 ¶ 11 This court has emphasized that in forgery prosecutions the State must prove that the defendant used the name of another. *See State v. Gonzalez*, 822 P.2d 1214, 1216 (Utah Ct.App.1991) (" '[T]he state must show that the defendant not only used the name of another, but must also show that [she] did so without any authority to do so.' " (second alteration in original) (quoting *State v. Collins*, 597 P.2d 1317, 1317 (Utah 1979))). Likewise, a federal court has held that "[i]t is well established that forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker." *Greathouse v. United States*, 170 F.2d 512, 514 (4th Cir.1948) (finding that it was not forgery for the defendant to issue a check in his own name on a bank in which he had no funds, despite the defendant's intent to defraud).

¶ 12 Additionally, in addressing elements of forgery similar to those articulated in our forgery statute, other states have held that one who signs his own name, purporting to act with the authority of another, is not guilty of forgery. For example, the Texas Court of Appeals has held that "one who signs his true name, and does not represent himself to be someone else of the same name, does not commit a forgery because his act does not purport to be that of another." *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). In *Nobles*, the court found that the defendant, in signing his own name to the corporation's deed under the false power of an officer of the corporation, did not commit forgery. *See id.* at 925–26. The court noted

that while the defendant "may [have been] guilty of falsely representing the power under which he executed the instrument . . . he did not represent his act to be that of another." *Id.* at 926.

¶ 13 Similarly, the New York Court of Appeals has held that the element of purporting to be another, as required under New York's forgery statute, "consist[ed] in falsely making an instrument purporting to be made by another." *People v. Mann*, 75 N.Y. 484, 486 (N.Y.1878) (finding a county officer who, without authority, executed a contract in his own name was not guilty of forgery). In *Mann*, the court distinguished purporting to be the act of another, a requisite element of forgery, from the false assumption of authority. *See id.*

> One who makes an instrument signed with his own name, but purporting to bind another, does not make an instrument purporting to be the act of another. . . . The instrument shows upon its face that it is made by himself and is in point of fact his own act. The wrong done . . . consists in the false assumption of authority to bind another . . . .

*Id.* at 486–87.

¶ 14 More recently, the New York Court of Appeals has held that " 'it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so' and 'the signer is guilty of false pretenses only.' " *People v. Cunningham*, 2 N.Y.3d 593, 780 N.Y.S.2d 750, 813 N.E.2d 891, 894 (2004) (citation omitted). In *Cunningham*, the court concluded that a corporate consultant did not commit forgery by signing his own name to a corporate check, although his signature to the check was in excess of the authority delegated to him by the corporation. *See id.* 780 N.Y.S.2d 750, 813 N.E.2d at 892. In reaching this conclusion, the court noted that "under our present Penal Law, as under prior statutes and the

2. Under Utah's forgery statute,

[a] person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he: . . . makes, completes, executes, authenticates, issues, transfers, publishes, or

utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another . . . .
Utah Code Ann. § 76–6–501(1)(b) (1999).

common law, a distinction must be drawn between an instrument which is falsely made, altered or completed, and an instrument which contains misrepresentations not relevant to the identity of the maker or drawer of the instrument." *Id.* 780 N.Y.S.2d 750, 813 N.E.2d at 893 (quotations and citations omitted). The court in *Cunningham* also engages in a lengthy discussion of forgery at common law, its codification into state statutes, and the fact that most states' forgery statutes follow the common law requirement that the writing purport to be that of another. *See id.* 780 N.Y.S.2d 750, 813 N.E.2d at 894 ("Although statutes vary, most jurisdictions in this country have tended to follow the [common law] approach to forgery.").

¶ 15 In the present case, Jensen similarly signed his own name to the Deed on the line reserved for BE and added the words "see lease." Consequently, Jensen did not make an instrument purporting to be the act of another. Thus, while Jensen, like the defendants in *Nobles* and *Mann,* may have been guilty of fraudulent assumption of authority, *see Christensen v. Nielson,* 73 Utah 603, 276 P. 645, 647–48 (1929) (discussing liability for false assumption of authority), the State failed to present sufficient evidence to raise a question of material fact as to whether in signing his own name on the Deed on the line reserved for BE, Jensen was purporting his signature to be the act of another. Thus, we reverse his conviction of forgery.

## II. *Shondel* Doctrine

¶ 16 Jensen also argues that the trial court erred by denying his motion to

reduce the fraudulent handling of records charge under the *Shondel* doctrine. *See State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969). The *Shondel* doctrine requires that "when two different statutory provisions define the same offense, a defendant must be sentenced under the provision carrying the lesser penalty." *State v. Green,* 2000 UT App 33, ¶ 6, 995 P.2d 1250. The doctrine applies only when the two statutory provisions proscribe precisely the same conduct. *See State v. Bluff,* 2002 UT 66, ¶ 33, 52 P.3d 1210. Moreover, "if the elements of the crime are not identical and the relevant statutes require proof of some fact or element not required to establish the other, the statutes do not proscribe the same conduct." *Green,* 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (alteration in original) (quotations and citation omitted). " 'Accordingly, to determine if the trial court erred ... we must compare the plain language of [the two statutes in question] to resolve whether they prohibit the same conduct and whether the elements of each crime are wholly duplicative.' " *State v. Valdez,* 2003 UT App 314, ¶ 9, 78 P.3d 627 (quoting *State v. Fedorowicz,* 2002 UT 67, ¶ 49, 52 P.3d 1194, *cert. denied,* 537 U.S. 1123, 123 S.Ct. 859, 154 L.Ed.2d 805 (2003) (alteration in original)).

¶ 17 Jensen was convicted of a third-degree felony for fraudulent handling of recordable writings under Utah Code section 76–6–503.[3] However, Jensen argues that because section 76–6–503 proscribes the same conduct as section 76–8–504(1),[4] prohibiting written false statements, and section 76–8–511,[5]

---

**3.** Utah Code section 76–6–503 reads:

(1) Any person who with intent to deceive or injure anyone falsifies, destroys, removes, or conceals any will, deed, mortgage, security instrument, or other writing for which the law provides public recording is guilty of fraudulent handling of recordable writings.
(2) Fraudulent handling of recordable writings is a felony of the third degree.

Utah Code Ann. § 76–6–503 (1999).

**4.** Utah Code section 76–8–504(1) reads:

A person is guilty of a class B misdemeanor if:
(1) He makes a written false statement which he does not believe to be true on or pursuant to a form bearing a notification authorized by law to the effect that false statements made therein are punishable....

*Id.* § 76–8–504(1).

**5.** Utah Code section 76–8–511 reads:

A person is guilty of a class B misdemeanor if he:
(1) Knowingly makes a false entry in or false alteration of anything belonging to, received, or kept by the government for information or record, or required by law to be kept for information of the government; or
(2) Presents or uses anything knowing it to be false and with a purpose that it be taken as a genuine part of information or records referred to in(1); or
(3) intentionally and unlawfully destroys, conceals, or otherwise impairs the verity or availability of any such thing.

*Id.* § 76–8–511.

prohibiting the falsification of government records, the trial court erred by not sentencing him under the more lenient sections 76–8–504(1) and 76–8–511, which carry misdemeanor penalties. Jensen contends that the elements of these three statutes are identical, the words used within them synonymous, and the required proof to establish each crime equivalent. Conversely, the State argues that unlike the more lenient sections 76–8–504(1) and 76–8–511, section 76–6–503 requires the State to prove that the defendant acted "with intent to deceive or injure." Utah Code Ann. § 76–6–503.

¶ 18 Given the plain language of these three statutes, the elements of the crimes are not identical because each statute requires proof of some fact or element not required under the other statutes.[6] *See Green,* 2000 UT App 33 at ¶ 6, 995 P.2d 1250. Specifically, the three statutes require the State to prove distinct mental states. Section 76–6–503 requires that the State prove the defendant acted with the intent to deceive or injure someone. *See* Utah Code Ann. § 76–6–503. In contrast, under section 76–8–504(1), the State must demonstrate that the defendant acted with the requisite belief. *See id.* § 76–8–504(1). Similarly, under section 76–8–511, the State must show that the defendant acted with the requisite knowledge. *See id.* § 76–8–511. As the Utah Supreme Court has recently noted, "[a]lthough the distinction between intentional conduct and knowing conduct is narrow, the statutory definition of these terms creates a meaningful difference between the two." *State v. Casey,* 2003 UT 55,¶ 36, 82 P.3d 1106 (citing Utah Code section 76–2–103(1) and (2) in holding that an attempted murder conviction requires proof of intent). In addition, the court noted that "the Utah Code specifically states that acting 'intentionally' encompasses acting 'knowingly,' ... but it does not provide for the reverse." *Id.* (citing Utah Code sections 76–2–104(3) (1999), which states that "[i]f acting knowingly is sufficient to establish the culpable mental state for an element of an offense,

that element is also established if a person acts intentionally" (alteration in original)).[7]

¶ 19 Consequently, because Utah Code section 76–8–503 does not proscribe the same conduct and does not require the same elements as sections 76–8–504(1) and 76–8–511, the *Shondel* doctrine is inapplicable. Thus, we hold that the trial court did not err by denying Jensen's motion to reduce the fraudulent handling of records charge under the *Shondel* doctrine.

## CONCLUSION

¶ 20 Because the State failed to establish a prima facie case as to whether in signing his own name on the Deed on the line reserved for BE, Jensen was purporting his signature to be the act of another, the trial court erred by denying Jensen's motion for a directed verdict. However, the trial court did not err by denying Jensen's motion to reduce the fraudulent handling of records charge under the *Shondel* doctrine. We affirm in part and reverse in part.

¶ 21 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

---

**6.** Indeed, section 76–8–511 explicitly states that it is distinguishing its proscribed offense, and thus, its penalties from section 76–6–503. *See id.*

**7.** However, in *State v. Casey,* 2003 UT 55,¶ 47, 82 P.3d 1106, the court does point out that it "recognize[s] that there exists a narrow set of circumstances where a person may act 'knowingly' without acting 'intentionally.' " *Id.*