2006 UT App 155

STATE of Utah, Plaintiff and Appellee,

v.

Frederick Jeremy ATKIN, Defendant and Appellant.

No. 20041020–CA.

Court of Appeals of Utah.

April 20, 2006.

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Matthew D. Bates, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and THORNE, Jr., JJ.

## OPINION

DAVIS, Judge:

¶ 1 Frederick Jeremy Atkin (Defendant) appeals his convictions for aggravated kidnaping, forcible sexual abuse, assault, interruption of a communication device, and domestic violence in the presence of a child. We affirm.

## BACKGROUND

¶ 2 On August 31, 2003, Defendant spent the night at the home of his girlfriend (the victim). At approximately 2:00 a.m., the victim's son woke up and came into the room where Defendant and the victim were sleeping. The victim got out of bed, took her son back into his room, and lay down next to him. Apparently jealous of the attention the victim was giving her son, Defendant got angry with her and a physical altercation ensued. Over the next two to three hours, Defendant terrorized the victim by beating her around the face and neck, choking her, and twisting her breast, causing significant pain. When the victim told Defendant she wanted to go to the hospital and tried to call for help, Defendant refused to let her leave, told her that he was going to make it "well worth his time" if she was going to turn him in, and ripped the phone cord out of the wall.

¶ 3 At approximately 5:30 a.m., Defendant demanded to be driven home. The victim, after seeing Defendant terrorize and apparently kick her son, agreed to do so. However, en route to Defendant's home, the victim stopped at a convenience store in another attempt to contact the police. There, a witness saw Defendant physically restrain the victim to keep her from exiting her vehicle. When the witness spoke to the victim, Defendant let the victim go and fled.

¶ 4 Defendant was charged with multiple crimes arising from these events, and a jury trial was held on August 5, 2004. During the trial, defense counsel presented evidence of the victim's history of domestic violence, and the State presented evidence of Defendant's history of domestic violence. In addition, the drug history of both the victim and Defendant was raised. Defendant was convicted of aggravated kidnaping, forcible sexual abuse, assault, interruption of a communication device, and domestic violence in the presence of a child. Defendant timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Defendant first argues that the forcible sexual abuse and the assault statutes, as applied to the facts of this case, punish the same conduct. Defendant therefore contends that his constitutional rights were violated because "[t]he *Shondel* doctrine requires that when two different statutory provisions define the same offense, a defendant must be sentenced under the provision carrying the lesser penalty." *State v. Green*, 2000 UT App 33, ¶ 6, 995 P.2d 1250 (citing *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146, 148 (1969)). Defendant concedes that he did not preserve this issue and therefore requests that we review this purported error under the plain error doctrine.

[T]o obtain appellate relief from an alleged error that was not properly objected to,

[Defendant] must show the following: (i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant], or phrased differently, our confidence in the verdict is undermined.

*State v. Casey,* 2003 UT 55, ¶ 41, 82 P.3d 1106 (quotations and citation omitted).

¶ 6 Defendant next contends that the conviction for aggravated kidnaping should have merged with the forcible sexual abuse conviction. Defendant again concedes that he did not preserve this issue and therefore asks us to review this purported error under the ineffective assistance of counsel doctrine. "Where, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998). "To prevail on a claim of ineffective assistance of counsel, [Defendant] must show that (1) trial counsel's performance was objectively deficient and (2) there exists a reasonable probability that absent the deficient conduct, the outcome would likely have been more favorable to [Defendant]." *State v. Mecham,* 2000 UT App 247, ¶ 21, 9 P.3d 777. "The failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle,* 1999 UT 96, ¶ 34, 989 P.2d 52 (quotations, citations, and alteration omitted).

¶ 7 Finally, Defendant argues that the trial court erred by allowing evidence of his prior bad acts, including his purported drug use and previous domestic violence charges. The parties disagree as to whether Defendant properly preserved this issue at trial. Defendant requests that we review this issue for abuse of discretion, *see State v. Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837 (reviewing the admission of prior bad acts evidence under abuse of discretion), while the State requests that we review this issue for plain error, *see Casey,* 2003 UT 55 at ¶ 41, 82 P.3d 1106. We need not determine whether Defendant properly preserved this issue, as we hold that the trial court did not err by admitting evidence of Defendant's prior bad acts.

## ANALYSIS

### I. The *Shondel* Doctrine

¶ 8 Defendant first argues the trial court committed plain error by failing to recognize that the forcible sexual abuse and the assault statutes, as applied to the facts of this case, punish the same conduct. He contends that his constitutional rights were violated because "[t]he *Shondel* doctrine requires that when two different statutory provisions define the same offense, a defendant must be sentenced under the provision carrying the lesser penalty." *Green,* 2000 UT App 33 at ¶ 6, 995 P.2d 1250 (citing *Shondel,* 453 P.2d at 148). However, the *Shondel* doctrine applies "only when the two statutory provisions proscribe precisely the same conduct." *State v. Jensen,* 2004 UT App 467, ¶ 16, 105 P.3d 951, *cert. denied,* 123 P.3d 815 (Utah 2005). Therefore, if the elements of the crime are not identical and the relevant statutes require "proof of some fact or element not required to establish the other," the statutes do not proscribe the same conduct and Defendant "may be charged with the crime carrying the more severe sentence or may stand convict[ed] on both," without violating his rights under the state and federal constitutions. *State v. Clark,* 632 P.2d 841, 844 (Utah 1981) (internal citations omitted); *see also State v. Kent,* 945 P.2d 145, 147 (Utah Ct.App.1997).

¶ 9 "Thus, in the present case, the question is whether the two statutes at issue proscribe exactly the same conduct, i.e., do they contain the same elements?" *State v. Gomez,* 722 P.2d 747, 749 (Utah 1986). Defendant was convicted of forcible sexual abuse and assault. The elements of forcible sexual abuse relevant to our analysis are: (1) a touching, (2) of the breast of a female, (3) with the intent to cause substantial emotional or bodily pain to any person. *See* Utah Code Ann. § 76–5–404 (2003); *State v. Jones,* 878 P.2d 1175, 1177 (Utah Ct.App.1994). The elements of assault relevant to our analysis are: (1) an act, committed with unlawful force or violence, (2) that causes bodily injury

to another or creates a substantial risk of bodily injury to another. *See* Utah Code Ann. § 76–5–102 (2003); *Jones,* 878 P.2d at 1177. Because the assault statute does not mention the requisite mens rea, the trial court instructed the jury that the act had to be done "knowingly and intentionally." *See* Utah Code Ann. § 76–2–102 (2003) ("[W]hen the definition of the offense does not specify a culpable mental state ..., intent, knowledge, or recklessness shall suffice to establish criminal responsibility.").[1]

¶ 10 The most obvious difference between the two statutes at issue is the mens rea required under each. While the statutory elements for forcible sexual abuse and assault both "involve offensive touching, they are distinguished by the reason for the touching." *Jones,* 878 P.2d at 1177. The instruction regarding forcible sexual abuse required "the 'intent' to cause substantial emotional or bodily pain," whereas the assault instruction required an intentional act that caused bodily injury to another or created a substantial risk of bodily injury to another. In other words, in regard to forcible sexual abuse, the State was required to establish *why* Defendant touched the victim— specifically here, that the touching was motivated by the desire to cause substantial emotional or bodily pain. But with assault, the State only had to establish that Defendant intentionally committed an act that caused bodily injury or a substantial risk thereof. Because the required mens rea is entirely different for the two statutes, the *Shondel* doctrine does not apply, and the trial court did not commit any error.

■ ¶ 11 Defendant implies that the provisions of the two statutes inherently invest the prosecutor with the discretion to charge Defendant with either forcible sexual abuse, a second degree felony, or assault, a misdemeanor, for the same conduct, thus constituting a denial of equal protection of the laws.

It is not unconstitutional for a state to impose a more severe penalty for a partic-

ular type of crime than the penalty which is imposed with respect to the general category of crimes to which the special crime is related....

As long as the legislative classifications are not arbitrary, the fact that conduct may violate both a general and a specific provision of the criminal laws does not render the legislation unconstitutional, even though one violation is subject to a greater sentence.

*Clark,* 632 P.2d at 843–44; *see also Kent,* 945 P.2d at 147 (holding that when two statutes do not proscribe the same conduct, "[a] defendant may be charged with the crime carrying the more severe sentence, even if the defendant could have been charged with the crime carrying the less severe sentence, so long as there is a rational basis for the legislative classification" (quotations and citation omitted)). Here, the legislative classifications are rational and far from arbitrary— the forcible sexual abuse statute provides greater protection to body parts that are traditionally considered private than does the assault statute. The statutes, therefore, do not violate Defendant's constitutional rights.

## II. Merger

■ ¶ 12 Defendant next argues that the conviction for aggravated kidnaping should have merged with the forcible sexual abuse conviction and that his trial counsel was ineffective for failing to raise the issue. However, "a defendant's kidnaping conviction is sustainable in addition to his sexual assault convictions" when the prosecutor shows "that the kidnaping detention was longer than the necessary detention involved in the commission of the sexual assault." *State v. Finlayson,* 2000 UT 10, ¶ 19, 994 P.2d 1243. "Thus, the facts establishing the kidnaping detention must not be merely incidental to the sexual assault, but separate and independent therefrom." *Id.; see also State v. Couch,* 635 P.2d 89, 93 (Utah 1981) (refusing to merge sexual assault and kidnaping convictions because "the kidnaping was not merely incidental or

---

1. The trial court instructed the jury that the act had to be done "knowingly *and* intentionally." (Emphasis added.) But under Utah Code section 76–2–102, "intent, knowledge, *or* recklessness shall suffice to establish criminal responsibility." Utah Code Ann. § 76–2–102 (2003) (emphasis added). However, neither party appeals this potential issue, and we therefore do not address it.

subsidiary to some other crime, but was an independent, separately punishable offense").

¶ 13 Utah courts have adopted a three-part test to determine if kidnaping merges with another crime:

If a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:

(a) [m]ust not be slight, inconsequential[,] and merely incidental to the other crime;

(b) [m]ust not be of the kind inherent in the nature of the other crime; and

(c) [m]ust have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Finlayson,* 2000 UT 10 at ¶ 23, 994 P.2d 1243 (quotations, citation, and alteration omitted). Although the third prong contains the qualification that the kidnaping must make "the other crime substantially easier of commission or substantially lessen[ ] the risk of detection," *id.* (quotations and citation omitted), these words "are not necessarily words of limitation because there may be instances . . . in which the kidnaping and the 'other crime' are virtually independent of one another," *State v. Lopez,* 2001 UT App 123, ¶ 16, 24 P.3d 993.

¶ 14 In *Finlayson,* the Utah Supreme Court held that the facts of the case did not support a separate conviction for aggravated kidnaping, where the defendant handcuffed the victim to the bed while raping her and then drove the victim home using a long and circuitous route in an attempt to confuse her. *See Finlayson,* 2000 UT 10 at ¶ 24, 994 P.2d 1243. However, in so holding, the court noted that "[t]he only argument asserted by the prosecutor at trial in support of the aggravated kidnaping charge was [the] defendant's handcuffing of the victim." *Id.* at ¶ 13. On appeal, the State argued for the first time that the defendant's actions *after* the commission of the crime—driving the victim home using a long and circuitous route— were sufficient to support a conviction for aggravated kidnaping. *See id.* at ¶ 32. The

court agreed that "these actions were of an independent significance separate from the commission of the sex crimes" and stated that "the detention appears sufficient to support a conviction for simple kidnaping." *Id.* at ¶ 33. However, the court refused to uphold the aggravated kidnaping conviction because the intent required by the aggravated kidnaping statute did not exist. *See id.* at ¶¶ 33–35.

¶ 15 Here, Defendant was convicted of forcible sexual abuse, which consisted of twisting the victim's breast. The aggravated kidnaping conviction does not merge with that conviction under the three-part test laid out in *Finlayson. See id.* at ¶ 23. First, the victim's confinement here was not slight, inconsequential, or merely incidental to the forcible sexual abuse. Specifically, the forcible sexual abuse—the twisting of the victim's breast—was completed in a matter of seconds, whereas the victim's confinement lasted hours. Second, confining the victim for hours is not inherent in the forcible sexual abuse perpetrated in this case. Finally, the confinement of the victim had significance independent of the forcible sexual abuse. Namely, Defendant would not let the victim leave her house and physically restrained her from leaving the car once the victim agreed to drive Defendant home. Moreover, unlike *Finlayson,* the jury here found that Defendant acted with the intent required by the aggravated kidnaping statute. *See* Utah Code Ann. § 76–5–302 (2003) (stating intent requirements for aggravated kidnaping). Because the two convictions do not merge, Defendant's counsel did not provide ineffective assistance of counsel for failing to request such merger. *See State v. Whittle,* 1999 UT 96, ¶ 34, 989 P.2d 52 ("The failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (quotations, citations, and alteration omitted)).

### III. Prior Bad Acts

¶ 16 Finally, Defendant contends that the trial court erred by allowing evidence of his prior bad acts, including Defendant's purported drug use and previous do-

mestic violence charges. Under rule 404(b) of the Utah Rules of Evidence,

> [e]vidence of other crimes, wrongs[,] or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Utah R. Evid. 404(b). Rule 404(b) does not "categorically preclude the admission of other bad acts evidence. Rather, it stands for the principle that such evidence is only admissible if it is relevant for a non-character purpose and meets the requirements of [r]ules 402 and 403." *State v. Houskeeper,* 2002 UT 118, ¶ 27, 62 P.3d 444 (quotations and citation omitted); *see also* Utah R. Evid. 402 (making irrelevant evidence inadmissible), 403 (excluding unfairly prejudicial evidence).

■■■ ¶ 17 "While rule 404(b) lists examples of some of the legitimate purposes for which other bad acts evidence may be admitted, the list is not exhaustive." *Houskeeper,* 2002 UT 118 at ¶ 28, 62 P.3d 444. Indeed,

> [i]t is well settled that when a defendant waives his right not to testify, his testimony, like that of any other witness, is subject to being impeached by cross-examination or by rebuttal evidence. Evidence for the purpose of impeaching credibility may be admissible even if it introduces evidence of a prior bad act.

*Id.* (internal citation omitted); *see also State v. Levin,* 2004 UT App 396, ¶ 26, 101 P.3d 846 ("When a defendant testifies that he has never used drugs, a trial court does not abuse its discretion when it allows the prosecution to present evidence of the defendant's

prior conviction for drug possession. Similarly, when a defendant seeks to mischaracterize a prior conviction, the court does not abuse its discretion in allowing the State to use prior conviction evidence to directly contradict the defendant's previous inaccurate testimony." (internal quotations and citations omitted)), *cert. granted,* 123 P.3d 815 (Utah 2005); *State v. Reed,* 820 P.2d 479, 482 (Utah Ct.App.1991) ("[I]n addition to impeaching a defendant on cross-examination, the State may also introduce on rebuttal any testimony or evidence 'which would tend to contradict, explain[,] or cast doubt upon the credibility of [a defendant's] testimony.'" (final alteration in original) (quoting *State v. Green,* 578 P.2d 512, 514 (Utah 1978))); *State v. Tucker,* 800 P.2d 819, 824 (Utah Ct.App.1990) ("Utah courts have allowed impeachment evidence even though it introduces evidence of a prior bad act if the purpose of the evidence is to affect credibility.").

■■ ¶ 18 Here, the evidence regarding Defendant's prior bad acts was clearly introduced to impeach Defendant. Defendant specifically testified that he had never been subjected to "[these] kind of charges in [his] life" and that he had not used methamphetamine for "quite some time."[2] The State impeached Defendant's testimony by bringing up instances in which Defendant had indeed been charged with serious domestic violence. The State also cross-examined Defendant about his purported drug use, called as a witness a police officer to testify on the effects of methamphetamine, and asked the jury to determine who it believed was using methamphetamine.[3] Because the evidence of Defendant's prior bad acts was used for the purpose of impeaching Defendant's credibili-

---

2. The State did not solicit any of this information. Instead, Defendant stated that similar charges had never been brought against him when asked why he did not contact the police when he learned of the victim's allegations. As for his purported drug use, Defendant testified in direct examination that he believed that the victim was taking methamphetamine on the night in question. On cross-examination, the State asked Defendant whether he was familiar with methamphetamine and its effects. In response, Defendant volunteered that he had "been clean for quite some time."

3. Defendant is troubled by the admission of evidence regarding prior bad acts for which he was not convicted. But it is irrelevant whether Defendant's bad acts resulted in convictions because the State was refuting Defendant's statements that he had "been clean for quite some time" and had never been subjected to these kind of "charges." Therefore, the State sought impeachment evidence regarding Defendant's purported drug use and previous domestic violence charges.

ty, it was relevant for a non-character purpose.[4]

¶ 19 Even if the evidence of Defendant's prior bad acts was intended for a proper purpose, we must also determine whether the evidence met the requirements of rules 402 and 403 of the Utah Rules of Evidence. *See Houskeeper*, 2002 UT 118 at ¶ 29, 62 P.3d 444. "Rule 402 requires that evidence be relevant. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (quotations and citation omitted); *see also* Utah R. Evid. 401 (defining relevant evidence), 402 (making irrelevant evidence inadmissible). "Rule 403 requires that evidence be excluded, even if relevant, if 'its probative value is substantially outweighed by the danger of unfair prejudice.'" *Houskeeper*, 2002 UT 118 at ¶ 30, 62 P.3d 444 (quoting Utah R. Evid. 403).[5]

¶ 20 Here, evidence of Defendant's prior bad acts was relevant to establishing his credibility, and credibility was a crucial issue in this case for two reasons. First, Defendant's testimony directly contradicted the victim's testimony—Defendant claimed the victim was the aggressor whereas the victim claimed Defendant was the aggressor. Second, Defendant's testimony attacked the victim's character, while presenting himself in a favorable light. Indeed,

> [i]t would be a mockery of our justice system to allow a defendant to take the stand and testify as to his own good character while impugning the character of an opposing witness, and then claim that his testimony [was] not subject to cross-examination because such inquiry would be too prejudicial.

*Reed*, 820 P.2d at 481–82 (stating that credibility was a "crucial issue" because the defendant's testimony "was in direct contradiction to [the victim's] account" and "attacked [the victim's] character, while presenting himself in a favorable light"). As such, the trial court did not err in admitting impeachment evidence of Defendant's prior bad acts.[6]

## CONCLUSION

¶ 21 We conclude that the trial court did not err by failing to apply the *Shondel* doctrine, and the forcible sexual abuse and assault statutes do not violate Defendant's constitutional rights. Furthermore, Defendant's trial counsel was not ineffective for failing to request the merger of Defendant's aggravated kidnaping and forcible sexual abuse convictions, as merger is inappropriate here. Finally, the trial court did not err by admitting evidence of Defendant's purported drug use and previous domestic violence charges,

---

4. The jury was not instructed to consider the evidence regarding Defendant's prior bad acts only for purposes of credibility. This omission concerns us because Utah courts have held that such jury instructions limit the improper prejudicial effect that prior bad acts evidence can have. *See, e.g., State v. Levin*, 2004 UT App 396, ¶ 27, 101 P.3d 846, *cert. granted*, 123 P.3d 815 (Utah 2005). However, neither party appeals this issue. Furthermore, in closing argument, the State specifically told the jury to consider Defendant's purported drug use and previous domestic violence charges when they "contemplate[d] who[m] to believe." As such, it appears that the State was relying upon Defendant's prior bad acts solely to impeach Defendant's credibility.

5. Defendant implies that the trial court did not engage in any analysis under rules 402 and 403. *See* Utah R. Evid. 402, 403. However, even if the trial court did not make specific findings under rules 402 and 403, we can infer that the requirements of these rules were met by virtue of the fact that the prior bad acts evidence was admitted. *See State v. Nelson–Waggoner*, 2000 UT 59, ¶ 28 n. 8, 6 P.3d 1120; *State v. Bradley*, 2002 UT App 348, ¶ 38, 57 P.3d 1139.

6. Defendant also contends that the trial court erred by allowing evidence of his probation and incarceration status. Although evidence of this kind may be prejudicial in certain cases, *see Chess v. Smith*, 617 P.2d 341, 344 (Utah 1980) (relating to appearance before a jury by a defendant in prison garb), it was not prejudicial here. We have already determined that the trial court did not err by admitting evidence of Defendant's previous domestic violence charges. Because evidence of the underlying charges was already properly before the jury, evidence that Defendant's probation was revoked as a result of the charges, and that he was incarcerated as a result of that revocation, was harmless. *Cf. State v. Reed*, 820 P.2d 479, 482 n. 2 (Utah Ct.App. 1991) ("Error is harmless when it is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the trial." (quotations and citation omitted)).

and Defendant was not prejudiced by the admission of evidence of his probation and incarceration status. We therefore affirm Defendant's convictions.

¶22 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE Jr., Judge.