**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JUAN M. CERVANTES-AGUILAR,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9566
(Petition for Review)

_____

**ORDER AND JUDGMENT[*]**
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Petitioner Juan M. Cervantes-Aguilar seeks review of a final order of removal.

He challenges the holding of the Board of Immigration Appeals (BIA) that he is

removable because he was convicted of an offense that constitutes a crime of

domestic violence under the Immigration and Naturalization Act (INA).  Exercising

jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Petitioner, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident in 2014.  In 2017 he pleaded no contest in Utah state court to assault, a Class B misdemeanor, in violation of Utah Code § 76-5-102.  Based on that conviction, Petitioner was charged as removable under 8 U.S.C. § 1227(a)(2)(E)(i) for having been convicted of a crime of domestic violence.  An immigration judge (IJ) sustained that charge.  The BIA agreed with the IJ and dismissed the appeal.

## II.    Discussion

Petitioner argues that the BIA erred in holding that his Utah simple-assault conviction under § 76-5-102 is a crime of domestic violence under § 1227(a)(2)(E)(i).  We review de novo whether an alien has been convicted of a removable offense.  *See Bedolla-Zarate v. Sessions*, 892 F.3d 1137, 1139 (10th Cir. 2018).[1]

### A.    The Categorical Approach

Aliens convicted of certain criminal offenses are removable.  *See* 8 U.S.C. § 1227(a)(2).  To determine whether an alien's state conviction constitutes a removable offense, we apply a categorical approach comparing the elements of the

---

[1] Petitioner repeatedly emphasizes that the government has the burden to demonstrate by clear and convincing evidence that he is removable based upon his conviction for Utah simple assault.  But he does not challenge the evidence supporting the fact of his conviction.  He argues that it does not constitute a removable offense.  Thus, he raises only a legal issue that we review de novo.

state statute with the elements of the generic federal offense as defined in the INA. *See Bedolla-Zarate*, 892 F.3d at 1139-40. Any act criminalized by the state statute must fall within the definition of the removable offense. *See id.* at 1140.

Petitioner was convicted of misdemeanor simple assault in violation of Utah Code § 76-5-102. That section provides, in relevant part:

> (1) Assault is:
>
>> (a) an attempt, with unlawful force or violence, to do bodily injury to another; or
>>
>> (b) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.

*Id.* § 76-5-102(1).[2] The removable offense in this case is a "crime of domestic violence," which the INA defines as "any crime of violence," as defined in 18 U.S.C. § 16, against a person in a qualified domestic relationship with the perpetrator. 8 U.S.C. § 1227(a)(2)(E)(i). Section 16(a) defines *crime of violence* as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).[3] In applying the

---

[2] If a state statute is divisible, meaning that it lists elements in the alternative, we modify our categorical approach by looking at certain documents in the criminal record to determine which elements of the statute formed the basis of the alien's conviction. *See Jimenez v. Sessions*, 893 F.3d 704, 709 (10th Cir. 2018). The government does not dispute Petitioner's contention that § 76-5-102(1) is not divisible. We therefore assume for purposes of the petition for review that the statute of conviction is indivisible and apply only the categorical approach.

[3] We consider only the definition of a crime of violence in § 16(a). *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1215-16 (2018) (invalidating § 16(b) as unconstitutionally vague).

3

categorical approach, we construe the elements of § 1227(a)(2)(E)(i) according to federal law and the elements of § 76-5-102 according to state law. *See United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017).

To conclude that a state statute is not categorically a removable offense, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the generic federal offense as defined in the INA. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To show such a realistic probability, an alien "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* But where a state statute's plain language applies more broadly than the federally defined offense, it requires no legal imagination to hold there is a realistic probability that the State will apply the statute to conduct that falls outside the generic definition of the crime. *See United States v. Titties*, 852 F.3d 1257, 1274-75 (10th Cir. 2017). Here, relying on both the plain language of the statute and Utah cases applying it, Petitioner argues that simple assault under § 76-5-102(1) is not categorically a crime of domestic violence. (He does not dispute that he had a qualified domestic relationship with the victim of his offense.)

B.      **Utah Simple Assault is Categorically "Against a Person"**

Petitioner first contends that while a "crime of domestic violence" must be "against a person," § 1227(a)(2)(E)(i), a conviction for Utah simple assault can be based upon an act committed against property. For this proposition, he relies on *State v. Wareham*, 143 P.3d 302, 308 (Utah. Ct. App. 2006), in which the court held

4

that the defendant's act of violently ransacking the victim's house in her presence was sufficient to sustain an assault conviction under § 76-5-102(1). But Petitioner ignores the court's explicit statement that the defendant, by his act of vandalizing the victim's house in her presence, had "committed an assault against [the victim]." *Id. See United States v. Pam*, 867 F.3d 1191, 1209-10 (10th Cir. 2017) (holding that a criminal statute (1) intended to protect persons rather than property and (2) construed as requiring the creation of a risk of harm to the person of another necessarily involved at least the attempted or threatened use of physical force against another person). Based upon the plain meaning of the statutory elements, Utah simple assault must be "against a person," as § 1227(a)(2)(E)(i) requires.

Nor does "physical force against the person . . . of another," as used in § 16(a), require that force be exerted *directly* against a person. Rather, "use of physical force includes force applied directly or indirectly." *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1066 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 494 (2018). "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* at 1065 (internal quotation marks omitted). In arguing that indirect force must actually cause an injury to a person, Petitioner ignores that § 16(a) applies broadly to "the use, attempted use, or threatened use of physical force" against a person. *See United States v. Fagatele*, 944 F.3d 1230, 1233 (10th Cir. 2019) (construing nearly identical elements-clause language in the sentencing guidelines), *petition for cert. filed*, No. 19-8221 (U.S. Apr. 3, 2020). Thus, the assault conviction in *Wareham* based upon the defendant's violently

5

ransacking the victim's home in her presence, thereby committing an assault *against her*, *see* 143 P.3d at 308, does not demonstrate a categorical difference between § 76-5-102(1) and § 16(a).

C. **Utah Simple Assault Categorically Requires Force that is Capable of Causing Physical Pain or Injury**

Petitioner also argues that § 76-5-102(1)(b) is not categorically a crime of violence because it does not require the level of "force" that is necessary under § 16(a). The parties agree that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (construing the term *physical force* in the definition of *violent felony* in the ACCA). In *Johnson* the Court declined to construe the term *force* in the ACCA as having the "specialized meaning that it bore in the common-law definition of battery," under which the element of force could "be satisfied by the slightest offensive touching." *Id.* at 139. But *Johnson*'s definition of *physical force* "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019).[4]

Petitioner does not dispute that to the extent a conviction under § 76-5-102(1)(b) is based upon an act that actually causes bodily injury, it is

---

[4] Petitioner asserts in his reply brief that *Stokeling*'s construction of "physical force" applies only to robbery statutes. But we have applied it in holding that an assault-type statute required the use, attempted use, or threatened use of physical force. *See United States v. Winder*, 926 F.3d 1251, 1254, 1256 (10th Cir.), *cert. denied*, 140 S. Ct. 559 (2019). Citing *Johnson* and *Stokeling*, we stated that "this

6

categorically a crime of violence because it is not possible to cause bodily injury without using force that is capable of producing that result.  But he contends that a conviction under § 76-5-102(1)(b) based on the elements of "unlawful force . . . that . . . creates a substantial risk of bodily injury to another" is not categorically a "crime of violence" under § 16(a).  He argues that because § 76-5-102(1)(b) refers to unlawful force "or" violence, these terms must have different meanings to avoid either term being superfluous.  *See Hall v. Utah State Dep't of Corr.*, 24 P.3d 958, 963 (Utah 2001).  And while he agrees that "violence" involves a level of force sufficient to cause bodily injury, Petitioner asserts that "unlawful force" clearly must be a lower level of force that includes mere offensive touching, which is insufficient to satisfy the physical-force element in § 16(a).  He maintains that even if this conclusion is not evident based upon the plain meaning of the statutory terms, there is still a realistic probability that a person could be convicted of Utah simple assault based upon mere offensive touching.  We are not persuaded.

To begin with, regardless whether *unlawful force* and *violence* have different meanings in the Utah statute, the statute requires the defendant to "attempt . . . to do bodily injury" or to perform an act "that causes bodily injury" or "creates a substantial risk of bodily injury."  *Bodily injury*, as used in § 76-5-102, "means physical pain, illness, or any impairment of physical condition."  Utah Code § 76-1-601(3).  While *substantial risk* is not defined by statute, *risk* commonly means

---

force does not need to be particularly strong or likely to cause pain or injury."  *Id.* at 1254.

"the chance of injury, damage, or loss; [especially], the existence and extent of the possibility of harm." *Risk*, Black's Law Dictionary (11th ed. 2019). And in this context, *substantial* means "[c]onsiderable in extent [or] amount." *Substantial*, Black's Law Dictionary (11th ed. 2019). Thus, to result in a conviction, the "unlawful force" must suffice to create a considerable possibility of physical pain, illness, or any impairment of physical condition.

This is enough force to satisfy the requirement of "physical force" in § 16(a). *Physical force* means "force *capable of* causing physical pain or injury." *Johnson*, 559 U.S. at 140 (emphasis added). And all that is required is the "potentiality" of causing physical pain or injury. *Stokeling*, 139 S. Ct. at 554. Thus, Utah simple assault is categorically a crime of violence under § 16(a).

Petitioner's arguments to the contrary are not persuasive. He points to Utah Court of Appeals decisions stating that assault under § 76-5-102 "involve[s] offensive touching." *State v. Jones*, 878 P.2d 1175, 1177 (Utah Ct. App. 1994); *see also State v. Ricks*, 436 P.3d 350, 352 (Utah Ct. App. 2018), *cert. denied*, 437 P.3d 1250 (Utah 2019); *State v. Atkin*, 135 P.3d 894, 898 (Utah Ct. App. 2006). But none of these cases had occasion to address the minimum amount of force necessary for an assault conviction, nor did they involve acts that would constitute mere offensive touching. *See Jones*, 878 P.2d at 1175 (defendant grabbed the victim's arm, pulled her, squeezed her buttocks, swung her around, poked her in the chest, and squeezed her breasts through her shirt); *Ricks*, 436 P.3d at 351 (defendant lacerated the victim's nipple, hit her head, face, and thigh, and split her cheek open); *Atkin*,

8

135 P.3d at 896 (defendant "terrorized the victim," beat her face and neck, choked her, and twisted her breast, causing significant pain). We do not think any of those opinions read "bodily injury" out of the Utah statute.

Petitioner next refers us to Justice Scalia's concurring opinion in *United States v. Castleman*, 572 U.S. 157, 177-78 & n.4 (2014) (Scalia, J., concurring), which cited § 76-5-102 as an example of a statute that prohibits both infliction of bodily injury and offensive touching. "Although a concurring opinion is not binding on us, we may consider it for its persuasive value." *United States v. Jefferson*, 911 F.3d 1290, 1300 n.10 (10th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 861 (2020). And few jurists have devoted more careful attention to statutory language than did Justice Scalia. But the Justice gave the reader no explanation for why he catalogued the Utah statute as he did; and his analysis of the issue before the Court would have been the same if he had read the statute as we do.

Petitioner's final contention is that even if the plain meaning of § 76-5-102(1) does not establish that it is broader than the definition of a crime of violence in § 16(a), there is still a realistic probability that Utah would apply that section to conduct that amounts to mere offensive touching. To establish such a realistic probability, "he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

Petitioner cites two Utah Court of Appeals decisions, but neither involved a mere offensive touching. *See In re J.W.*, 30 P.3d 1232, 1234 (Utah Ct. App. 2001)

9

(defendant threw snowballs at victim in what "was clearly an attempt to do bodily injury to another" (internal quotation marks omitted)); *State v. Wright*, 442 P.3d 1185, 1195-96 (Utah Ct. App.), *cert. denied*, 456 P.3d 391 (Utah 2019) (defendant pushed mother into chair).  He also points to two plea agreements entered in Utah municipal courts that describe the conduct underlying the defendants' simple assault convictions under § 76-5-102(1) as involving offensive touching.  *See* Admin. R. at 166, 183.  But trial courts do not create law; their decisions do not even bind themselves.  And informality reigns in municipal courts.  We therefore have restricted our reasonable-probability review to decisions from appellate courts.  *See Harris*, 844 F.3d at 1264.[5]

## III.    Conclusion

The petition for review is denied.

Entered for the Court

Harris L Hartz
Circuit Judge

---

[5] We recognize that this general rule may not apply to trial-court proceedings in the petitioner's own case.

10