The People of the State of New York, Respondent, v Dylesha Robinson, Appellant. [56 NYS3d 248]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Hollie, J.), rendered February 29, 2012, convicting her of assault in the second degree (three counts) and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial before a different Justice.

After a jury trial, the defendant was convicted of three counts of assault in the second degree and one count of criminal possession of a weapon in the fourth degree based on a series of physical altercations involving three victims that took place outside of an apartment complex in Queens. The Supreme Court sentenced her to an aggregate term of six months of incarceration followed by five years of probation. The defendant's sole contention on appeal is that she was deprived of her right to a fair trial by the court's unwarranted and pervasive interference in the examination of the witnesses at trial (see generally People v Yut Wai Tom, 53 NY2d 44 [1981]).

At the outset, we reject the People's contention that the issue is unpreserved merely because defense counsel did not object to the first instances of interference by the Supreme Court. "To suggest . . . that an objection was required to be entered in this instance at the first sign of court interference misperceives the nature of the claim being asserted and would do an injustice to CPL 470.05 (subd 2)" (id. at 55; see People v Charleston, 56 NY2d 886, 888 [1982]). The record demonstrates that defense counsel timely and appropriately registered his protest to the claimed error. In addition to objecting to specific questions, counsel unequivocally asserted that the court's extensive questioning of witnesses was intrusive and prejudicial, thus providing an opportunity to correct the error (see CPL 470.05 [2]; cf. People v Charleston, 56 NY2d at 887-888; People v Ojeda, 118 AD3d 919, 919 [2014]).

Turning to the merits, we agree with the defendant that she was deprived of a fair trial by the Supreme Court's excessive and prejudicial interference with the examination of witnesses.

"Trial judges have wide discretion in directing the presentation of evidence but must exercise that discretion appropriately and without prejudice to the parties" (People v Arnold, 98 NY2d

63, 67 [2002]; *see* CPL 260.30). While "neither the nature of our -adversary system nor the constitutional requirement of a fair trial preclude a trial court from assuming an active role in the truth-seeking process," the court's discretion in this area is not unfettered (*People v Storfs*, 47 NY2d 882, 883 [1979]; *see People v Arnold*, 98 NY2d at 67; *People v Yut Wai Tom*, 53 NY2d at 57-58; *People v Keppler*, 92 AD2d 1032, 1032 [1983]). "The overarching principle restraining the court's discretion is that it is the function of the judge to protect the record at trial, not to make it. *Although the law will allow a certain degree of judicial intervention in the presentation of evidence, the line is crossed when the judge takes on either the function or appearance of an advocate at trial*" (*People v Arnold*, 98 NY2d at 67 [citation omitted and emphasis added], citing, inter alia, *People v Yut Wai Tom*, 53 NY2d at 58; *see People v Chatman*, 14 AD3d 620, 620 [2005]). Thus, while there is no absolute bar to a trial court asking a particular number of questions of the witnesses in order to advance the goals of truth and clarity, a court may not "assume the advocacy role traditionally reserved for counsel, and in order to avoid this, the court's discretion to intervene must be exercised sparingly" (*People v Arnold*, 98 NY2d at 68 [citations omitted]).

Here, notwithstanding numerous objections by defense counsel, the Supreme Court exercised little or no restraint in questioning the witnesses at length and improperly "assume[d] the advocacy role traditionally reserved for counsel" (*id.*). We acknowledge that this trial was lengthy because it involved three codefendants and multiple complainants. However, contrary to the People's contention, the court's questioning of the witnesses far exceeded what was necessary to "clarify[ ] confusing testimony" or facilitate "the orderly and expeditious progress of the trial" (*People v Yut Wai Tom*, 53 NY2d at 57). The court engaged in protracted and often unnecessary questioning on both direct and cross-examination, and at times acted as an advocate for the People (*cf. People v Ojeda*, 118 AD3d 919 [2014]).

For example, the Supreme Court effectively took over the direct examination of a complaining witness while the prosecutor was eliciting details related to whether the witness was stabbed during the physical altercations at issue. In pertinent part, the court posed at least eight fact-specific questions about her physical location in relation to that of her attacker. Moreover, during the direct examination of another complaining witness, the court asked approximately six consecutive questions, and summarized the witness's testimony as follows:

"THE COURT: You described, just so that I am understanding these phases of your fight, you are saying that initially there was a fight with you and with you standing, and then that fight had at some point turned at a point where you are now on the grass with [the defendant], and then you are saying that there was a point you were able to stand up. And you also said there was at that point the fight began again with you and [the defendant] hair pulling, etcetera.

"THE WITNESS: Yes."

Similarly, during the prosecutor's direct examination of the investigating detective, the Supreme Court interjected to ask six consecutive questions about the procedure used by the detective to generate suspects in the case. The court asked many additional questions during the direct examination of the People's other witnesses.

Further, during the defendant's cross-examination of a complaining witness, the Supreme Court redirected the inquiry and blunted the force of counsel's attempt to impeach the witness regarding injuries sustained by one of the victims. In pertinent part, the questioning proceeded as follows:

"Q. Isn't it true that the only information you ever gave the detectives was about what happened to you and what happened to . . . [complaining witness] Lakeisha; you never gave any information about what happened to . . . [complaining witness] Ebony—[prosecutor]: Objection. . . .

"A. I only told them who—how I seen specifically we got cut. I only know specifically how I got cut and I only know specifically how Lakeisha got cut.

"THE COURT: So you are being asked whether or not as far as information that you had given the detectives about Ebony—

"THE WITNESS: I never said anything about Ebony o[r] how she got cut.

"Q. Did you say anything about how Ebony was attacked or how many people fought with her; did you tell the detectives?

"A. We was all in a group. They was telling their story, and I told what I seen.

"Q. And weren't you, as part of that story, asked if you had any information as to what happened to—what happened to Ebony?

"[prosecutor]: Objection. Hearsay . . .

"THE COURT: You are being asked whether you were asked by [a detective] any questions.

"THE WITNESS: They just told us to tell the story. That's it. So they wrote down what they wrote down.

"[defense counsel]: May I ask the questions?

"THE COURT: So you are saying you are in this room[?]

"THE WITNESS: As a group.

"THE COURT: [A] group of you?

"THE WITNESS: Everyone is telling their story.

"THE COURT: How many people are in this group?

"THE WITNESS: All the victims.

"THE COURT: When you said that they were asking you to tell your story, were you all in the same room at the time that each one told their story?

"THE WITNESS: Correct.

"THE COURT: And did you tell the detectives each separately in this room what it is that you recall?

"THE WITNESS: Correct.

"[defense counsel]: Most respectfully, may I conduct my inquiry? I would like to cross-examine my own witness.

"THE COURT: I understand.

"[defense counsel]: Thank you.

"THE COURT: But you are saying that you were each in the room together?

"THE WITNESS: Correct.

"THE COURT: And you gave your story separately?

"THE WITNESS: Everybody took time, everybody took time to, you know, break it down.

"THE COURT: Each one took time to separately make a statement?

"THE WITNESS: Correct."

Only after counsel objected three times and the Supreme Court essentially disregarded him in front of the jury, did the court allow him to resume his cross-examination.

Additionally, while defense counsel was attempting to impeach a prosecution witness with her grand jury testimony, the Supreme Court demonstrated apparent bias in favor of the People and essentially vouched for the veracity of the witness by commenting, "I am almost sure that in the course of the trial that a witness who is giving any testimony in the course of this trial, any witness, is answering a question based upon their own personal knowledge and not on information given to them by others."

Viewing the record as a whole, we find that the course of conduct of the Supreme Court was such that the court assumed

the appearance, if not the function, of an advocate at the trial by its extensive examination of certain witnesses (*see People v Arnold*, 98 NY2d at 67; *Matter of Jacqulin M.*, 83 AD3d 844, 844 [2011]; *People v Chatman*, 14 AD3d at 620), and that the court demonstrated apparent bias in favor of the People (*cf. People v Reynolds*, 90 AD3d 956, 957 [2011]).

Contrary to the People's argument, the defendant's contention that she was deprived of her right to a fair trial is not subject to a harmless error analysis (*see People v Mees*, 47 NY2d 997 [1979]; *People v Crimmins*, 36 NY2d 230, 237-238 [1975]; *cf. People v Holiday*, 142 AD3d 625, 626 [2016]).

Accordingly, we remit the matter to the Supreme Court, Queens County, for a new trial before a different Justice (*see People v Reynolds*, 90 AD3d at 957; *Matter of Jacqulin M.*, 83 AD3d at 844; *cf. People v Kocsis*, 137 AD3d 1476, 1481-1482 [2016]). Austin, J.P., Cohen, Maltese and Duffy, JJ., concur.