The People of the State of New York, Respondent,
against
Deborah Joseph, Appellant.




Andrew E. MacAskill, Esq., for appellant.
Nassau County District Attorney (Daniel Bresnahan, W. Thomas Hughes of counsel), for respondent.

Appeal from a judgment of the District Court of Nassau County, First District (Joseph B. Girardi, J.), rendered May 8, 2015. The judgment convicted defendant, upon a jury verdict, of criminal possession of a forged instrument in the third degree and attempted petit larceny.




ORDERED that the judgment of conviction is modified, on the law, by vacating the conviction of criminal possession of a forged instrument in the third degree and vacating the sentence imposed thereon, and dismissing that count of the accusatory instrument; as so modified, the judgment of conviction is affirmed.
Defendant was charged with criminal possession of a forged instrument in the third degree (Penal Law § 170.20) and attempted petit larceny (Penal Law §§ 110.00, 155.25). The accusatory instrument alleges that, on May 1, 2013, in Garden City, Nassau County, defendant attempted to deposit a fraudulently obtained check in the amount of $23,500 issued by M & T Bank. 
At a jury trial, an employee of the Garden City branch of M & T Bank testified that, in April 2013, defendant contacted the bank and asked about cashing a check in the amount of [*2]$23,500. Upon the bank employee's request, defendant faxed the employee a copy of the check, which indicated that the check was issued by a branch of M & T Bank located in Maryland, and that the check was a bank check or cashier's check bearing no information regarding the underlying account from which the money used to fund the issuance of the check had been withdrawn. The bank employee then contacted the Maryland branch, inquiring whether that branch had issued a bank check payable to defendant in the amount of $23,500. The Maryland branch confirmed that it had issued the check and that the check was valid. Thereafter, the bank employee called defendant and asked defendant why she was being paid $23,500. Defendant responded that she was being paid for some spices that she had made for a customer. The bank employee then asked for the customer's name, to which defendant responded that she did not know and would have to call back. Approximately three days later, defendant sent the bank employee a fax, providing, among other things, the name of the alleged customer, the name of the bank that issued the check and the title of the underlying account from which the money used to fund the issuance of the check had been withdrawn, which was Steelhouse, LLC. When the bank employee later contacted the Maryland branch to obtain a written approval for cashing the check, the Maryland branch informed the employee that "there [was] something going on with the [subject] account" and asked her to "hold onto" the check. The bank employee thereafter called defendant, informing her that the bank check could not be cashed but that defendant could come to the Garden City branch, open an account, deposit the check into the account and withdraw the funds later. The following day, on May 1, 2013, defendant went to the Garden City branch with the check and asked to see the bank employee. The bank employee asked her manager to call 911, then sat down with defendant and told defendant that they would open an account for defendant. Defendant handed the bank employee the check and her driver's license. As the bank employee was establishing the profile for defendant's account, the police arrived and arrested defendant. Upon cross-examination, the bank employee confirmed that the check in question was issued by M & T Bank and bore the requisite signatures of bank employees, and acknowledged that the check had never been endorsed by defendant. 
The police officer who arrested defendant testified that, upon arriving at the Garden City branch, he saw defendant sitting at the bank employee's desk and that he ultimately retrieved the check from the crime scene. 
The owner of Steelhouse, LLC testified that Steelhouse, LLC was a construction company in Maryland and that she lived in Maryland and held an account in the name of Steelhouse, LLC at the Maryland branch of M & T Bank. The owner of Steelhouse, LLC further testified that, in April 2013, she noticed that at least $23,500 had been transferred out of the company's account without her knowledge or consent. The owner was thereafter shown by the bank's employees several emails ostensibly sent by her requesting the bank to issue a check in the amount of $23,500 using the funds in her company's account. The owner testified that she had never sent or seen those emails and had never made such request. The owner also testified that she had never seen or done business with defendant and that there was no reason for any funds to be transferred out of the company's account to defendant.
Following the trial, defendant was convicted of both charges. The District Court sentenced defendant to 30 days in prison followed by three years of probation on each conviction, to run concurrently with each other, and imposed a mandatory surcharge of $175 and a $25 crime victim's assistance fee on each conviction. 
Defendant first contends that her conviction of criminal possession of a forged instrument in the third degree was not supported by legally sufficient evidence, claiming, among other things, that the People failed to prove that the bank check is a forged instrument within the meaning of Penal Law § 170.20. We agree.[FN1]


"A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he [or she] utters or possesses a forged instrument" (Penal Law § 170.20). A forged instrument is "a written instrument which has been falsely made, completed or altered" (Penal Law § 170.00 [7]). "A person falsely makes' a written instrument when he [or she] makes or draws a complete written instrument . . . , which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he [or she] did not authorize the making or drawing thereof" (Penal Law § 170.00 [4]; see People v Ippolito, 20 NY3d 615, 620-621 [2013]; People v Cunningham, 2 NY3d 593, 596-597 [2004]). "[T]he ostensible drawer is the person who, from the face of the instrument, would appear to be its drawer" (People v Levitan, 49 NY2d 87, 92 [1980]; see People v Briggins, 50 NY2d 302, 307 [1980]). 

Here, inasmuch as the bank check at issue bears only the name and address of M & T Bank, the bank is the ostensible drawer of the check (see People v Briggins, 50 NY2d at 307; People v Levitan, 49 NY2d at 92; see also Golden v Citibank, N.A., 23 NY3d 935, 936 [2014]; Dziurak v Chase Manhattan Bank, N. A., 44 NY2d 776, 777 [1978]). Further, the placement of the signatures of two M & T Bank employees rendered the bank the actual drawer of the check (see People v Zeller, 122 AD3d 1081, 1082-1083 [2014]). Since the crime of forgery essentially "involves the making, altering, or completing of an instrument by someone other than the ostensible maker or drawer or an agent of the ostensible maker or drawer" (People v Levitan, 49 NY2d at 90), there is no forgery where, as here, "the ostensible drawer and the actual drawer are in fact one and the same person" (id. at 91; see People v Cunningham, 2 NY3d at 597; People v Morehouse, 109 AD3d 1022, 1023 [2013]). 

The People argue that the ostensible drawer of the check should be deemed to be not M & T Bank, but the owner of the underlying account from which the money used to fund the bank check had been withdrawn. Contrary to the People's argument, the owner of the underlying account should not be deemed to be the ostensible drawer of the check, as nowhere on the check did the owner's name or any information relating to the underlying account appear (see People v Levitan, 49 NY2d at 92 ["The flaw in this argument, quite simply, is that it confuses the ostensible drawer (of a deed) with the person who could create a valid deed"]). Given that the ostensible drawer and the actual drawer of the check is M & T Bank, the check is not a forged instrument under the statute (see People v Cunningham, 2 NY3d at 597; People v Asai, 66 AD3d 1138, 1140 [2009]). While the check was fraudulently obtained, it was the authentic creation of M & T Bank by its designated agents, who have general authority to issue bank checks (see People v Asaro, 94 NY2d 792, 793 [1999]; People v Asai, 66 AD3d at 1139-1140; People v Seavey, 305 AD2d 937, 938 [2003]; People v Adkins, 236 AD2d 850, 850 [1997]). Therefore, even viewing the evidence in the light most favorable to the People, there is no valid line of reasoning and permissible inferences from which a rational jury could have concluded that the proof was sufficient to support defendant's conviction of criminal possession of a forged instrument in the third degree (see People v Asai, 66 AD3d at 1140; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Consequently, defendant's conviction of that count and the sentence imposed thereon must be vacated.

However, we are not persuaded by defendant's contention that, because the evidence adduced at trial failed to establish that she had come dangerously near to completing the crime of petit larceny, the evidence is legally insufficient to support her conviction of attempted petit larceny. "A person is guilty of petit larceny when he [or she] steals property" (Penal Law § 155.25). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). "In order to constitute an attempt, the defendant's conduct must have passed the stage of mere intent or mere preparation to commit a crime. In other words, the defendant must have engaged in conduct that came dangerously near commission of the completed crime" (People v Naradzay, 11 NY3d 460, 466 [2008] [internal quotation marks and citations omitted]; accord People v Carpenter, 138 AD3d 1130, 1132 [2016]; see People v Denson, 26 NY3d 179, 189 [2015]; People v Acosta, 80 NY2d 665, 670 [1993]; People v Pannizzo, 130 AD3d 467, 468 [2015]). Furthermore, it is well settled that the "dangerously near" standard "does not . . . mandate that the defendant take the final step necessary to complete the offense" (People v Naradzay, 11 NY3d at 466 [internal quotation marks and citation omitted]; see People v Denson, 26 NY3d at 189; People v Mahboubian, 74 NY2d 174, 190 [1989]; People v Bracey, 41 NY2d 296, 300 [1977]). The determination of whether a defendant has crossed the "the boundary where preparation ripens into punishable conduct depends greatly on the facts of the particular case" (People v Mahboubian, 74 NY2d at 190; see People v Naradzay, 11 NY3d at 467). 

Here, defendant's conduct of attempting to open an account with M & T Bank to deposit the bank check amounted to conduct which "carr[ied] the project forward within dangerous proximity to the criminal end to be attained" (People v Bracey, 41 NY2d at 300 [internal [*3]quotation marks and citation omitted]), namely, to steal the funds (see People v Swift, 278 AD2d 110, 111 [2000]). The fact that defendant had not yet endorsed the check—the final step necessary to obtain the funds—does not mean that the steps she had already taken could not constitute an attempt to steal the money (see People v Denson, 26 NY3d at 189; People v Naradzay, 11 NY3d at 466; People v Mahboubian, 74 NY2d at 190). Notably, defendant's activities "had gone to the extent of placing it in [her] power to commit the offense unless interrupted" (People v Mahboubian, 74 NY2d at 191 [internal quotation marks and citation omitted]). Although it was not impossible that, had the police not intervened, defendant might have changed her mind and abandoned her attempt to gain access to the funds, "the theoretical possibility that defendant[] might yet have renounced the criminal venture does not obviate [her] liability for an attempt, for that is true of any attempt interrupted by the police" (id. at 190). Therefore, viewing the evidence in the light most favorable to the People, we find that the evidence is legally sufficient to support defendant's conviction of attempted petit larceny (see generally People v Bleakley, 69 NY2d at 495). 

Defendant's contention that she was denied a fair trial due to the District Court's excessive questioning of witnesses is unpreserved, as defendant did not object to any of the court's interventions that she now complains of (see CPL 470.05 [2]; People v Charleston, 56 NY2d 886, 887-888 [1982]; People v Ojeda, 118 AD3d 919, 919 [2014]; compare People v Robinson, 151 AD3d 758, 758 [2017]). In any event, defendant's contention is without merit. The constitutional command to afford a fair trial does not "inhibit a [t]rial [j]udge from assuming an active role in the resolution of the truth" (People v De Jesus, 42 NY2d 519, 523 [1977]; see People v Yut Wai Tom, 53 NY2d 44, 56 [1981]). "[A] trial judge is permitted to question witnesses to clarify testimony and to facilitate the progress of the trial, and, if necessary, to develop factual information" (People v Adams, 117 AD3d 104, 109 [2014] [internal quotation marks and citation omitted]; see People v Yut Wai Tom, 53 NY2d at 56-57; People v De Jesus, 42 NY2d at 523; People v Mendes, 3 NY2d 120, 121 [1957]). "Th[is] power must, of course, be exercised sparingly, without partiality, bias or hostility" (People v Storfs, 47 NY2d 882, 883 [1979] [citations omitted]; see People v Arnold, 98 NY2d 63, 67-68 [2002]; People v Moulton, 43 NY2d 944, 945-946 [1978]; People v Robinson, 136 AD3d 1064, 1065 [2016]), and the trial judge must be guided by the overarching principle that his or her role is "to protect the record at trial, not to make it" (People v Arnold, 98 NY2d at 67; see People v Towns, 151 AD3d 1638, 1639 [2017]; People v Robinson, 151 AD3d at 759). In this regard, it is the "substance and not the number of questions asked [that] is the important consideration" (People v Yut Wai Tom, 53 NY2d at 58; see People v Arnold, 98 NY2d at 67; People v Melendez, 31 AD3d 186, 196 [2006]), and "the line is crossed when the judge takes on either the function or appearance of an advocate at trial" (People v Arnold, 98 NY2d at 67; see People v Yut Wai Tom, 53 NY2d at 55-56). Finally, "[e]ven if a trial judge makes intrusive remarks that would better have been left unsaid, or questions witnesses extensively, the defendant is not thereby deprived of a fair trial so long as the jury is not prevented from arriving at an impartial judgment on the merits' " (People v Adams, 117 AD3d at 109, quoting People v Moulton, 43 NY2d at 946; see People v Gonzalez, 38 NY2d 208, 210-211 [1975]; People v Melendez, 31 AD3d at 197). 

Here, the record demonstrates that most of the court's interjections were properly aimed at clarifying the testimony and eliciting relevant facts (see People v Adams, 117 AD3d at 109; People v Nurse, 8 AD3d 301, 301 [2004]; People v Wanton, 256 AD2d 125, 126 [1998]; People v Washington, 219 AD2d 502, 503 [1995]). Although one of the court's interventions was inappropriate, it was not so egregious as to affect the jury's judgment on defendant's culpability (see People v Moulton, 43 NY2d at 946; People v Baxter, 108 AD3d 1158, 1159-1160 [2013]; People v Rios-Davilla, 64 AD3d 482, 483 [2009]; compare People v Arnold, 98 NY2d at 68-69; People v Robinson, 151 AD3d at 759-761). Furthermore, the record, as a whole, does not show that the District Court took on either the function or appearance of an advocate, conveyed to the jury that the court had any personal opinion on the merits or displayed any bias towards defendant (see People v Ojeda, 118 AD3d at 919; People v Galloza, 270 AD2d 69, 70 [2000]). In addition, the court mitigated any potential prejudice flowing from the complained-of conduct by instructing the jury not to draw any inference from the court's remarks or assign special weight to the testimony elicited by the court, and there was overwhelming evidence of defendant's guilt (see People v Adams, 117 AD3d at 111; People v Whitecloud, 110 AD3d 626, 627 [2013]; People v Gonzalez, 251 AD2d 51, 52-53 [1998]). Under these circumstances, defendant was not deprived of a fair trial. 

Finally, we find no merit to defendant's contention that her sentence of 30 days in prison was excessive and should be reduced to time served. It is well established that a sentence that falls within the permissible statutory range will not be disturbed unless there is a clear showing that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification (see People v Ramos, 133 AD3d 904, 908 [2015]; People v Silva, 39 Misc 3d 149[A], 2013 NY Slip Op 50949[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013]; People v Everle, 37 Misc 3d 58, 60 [App Term, 2d Dept, 9th & 10th Jud Dists 2012]; People v Giglione, 34 Misc 3d 72, 75 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). Here, defendant's sentence fell within the permissible statutory range (see Penal Law § 70.15 [1]). While the People and the presentence report recommended no jail time, the imposition of sentence is solely the responsibility of the sentencing court, which is free to reject the recommended sentence as inadequate (see People v Farrar, 52 NY2d 302, 305 [1981]; People v Arogundy, 112 AD2d 1003, 1004 [1985]; People v Robert W, 47 AD2d 793, 793 [1975]). In sentencing defendant, the District Court properly considered the gravity and nature of defendant's crime and her lack of remorse (see People v Mohawk, 142 AD3d 1370, 1371 [2016]; People v Seymore, 106 AD3d 1033, 1034 [2013]; People v Garcia, 46 AD3d 573, 574 [2007]), as well as the purpose of the penal sanction to protect the public (see People v Farrar, 52 NY2d at 305; People v Howard, 61 AD3d 993, 995 [2009]). The court also properly considered the fact that defendant attempted to communicate with the jury during the People's summation by repeatedly shaking her head, despite the court's warning not to do so (see generally People v Walker, 53 AD3d 672, 673 [2008]; People v Kane, 6 AD3d 986, 987 [2004]). To the extent defendant argues that the sentence imposed improperly penalized her for exercising her constitutional right to remain silent, defendant's argument lacks merit, as the record reveals no retaliation or vindictiveness by the District Court against defendant for remaining silent (see People v Clark, 129 AD3d 1, 26 [2015]; see also People v Mitchell, 129 AD3d 1319, 1321 [2015]). In view of [*4]the foregoing, defendant failed to show the existence of extraordinary circumstances or any abuse of discretion by the District Court warranting a reduction of the sentence in the interest of justice (see People v Crockett, 30 AD3d 768, 771 [2006]; compare People v Peters, 277 AD2d 512, 515 [2000]; People v Smith, 222 AD2d 738, 738 [1995]; People v Jiminez, 82 AD2d 996, 996-997 [1981]).

Accordingly, the judgment of conviction is modified by vacating the conviction of criminal possession of a forged instrument in the third degree and the sentence imposed thereon, and dismissing that count of the accusatory instrument.

MARANO, P.J., TOLBERT and GARGUILO, JJ., concur.

ENTER:

Paul Kenny

Chief Clerk

Decision Date: November 30, 2017



Footnotes

Footnote 1: We note that defendant's legal sufficiency claim is preserved for appellate review, as defendant's motions to dismiss were specifically directed at the deficiency in the People's proof that she now raises on appeal (see People v Hawkins, 11 NY3d 484, 491-492 [2008]; People v Williams, 150 AD3d 1273, 1278 [2017]).